AUSTIN *v.* STATE OF MARYLAND

[No. 222, September Term, 1968.]

*Decided May 1, 1969.*

314

The cause was argued before HAMMOND, C. J., and MAR-BURY, McWILLIAMS, FINAN and SMITH, JJ.

*Edward J. Angeletti* and *John D. Hackett* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney of Baltimore City,* and *James F. Garrity, Assistant State's Attorney of Baltimore City,* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

We review this case on a writ of certiorari (Code (1968 Repl. Vol.) Art. 5, Sec. 21A) for the sole purpose of determining the correctness of the holding of the Court of Special Appeals sustaining the trial court's refusal to admit into evidence a police report, pertaining to the identification of the accused, as given to a police officer by a witness near the scene of the crime.

At a trial held February 20-21, 1967, in the Criminal Court of Baltimore, a jury convicted the appellant, John Henry Austin, of robbery with a deadly weapon. He was thereafter sentenced to a term of twenty years in the Maryland Penitentiary.

The evidence adduced at the trial established that on the morning of February 16, 1965, Mrs. Mae Duda was robbed of some $788.00 by two negro men who entered her living quarters above the funeral home she operated in Baltimore City. The faces of both men, one of whom carried a revolver, were covered with blue handkerchiefs, but during a struggle the mask fell from the face of one of them.

On March 8, 1965, Mrs. Duda identified a police photograph of the appellant as the man who had become unmasked in the course of the crime. On March 12, 1965, Mrs. Duda again identified the appellant from a police line-up as one of her assailants.

At the trial, in presenting his defense to the charges against him, appellant read into the record the former testimony of John

W. Ketcham, since deceased, taken from the transcript of the appellant's prior trial which had been invalidated as a result of *Schowgurow v. State*, 240 Md. 121, 213 A. 2d 475 (1965). At that trial Ketcham had testified that about the time of the robbery he observed two negro men wearing dark overcoats enter Mrs. Duda's premises and then depart about twenty minutes later. Ketcham was not, according to his testimony, able to identify either of the men. Appellant then called Sergeant James Gorsuch as a witness. He testified that immediately after the crime he had interviewed Ketcham and had written a departmental report following the interview. The appellant offered the report as evidence for the purpose of showing that Sergeant Gorsuch had received from Ketcham a description of the two men substantially different from that given the police by Mrs. Duda (a description also possibly different from that of the appearance of the appellant himself), and urged that it should be admitted as part of the *res gestae*. However, the State objected to the introduction of this report and the trial court sustained the objection on the basis that since Mr. Ketcham was deceased, there was nothing further that could be added or detracted from his testimony given at the prior trial. The trial court also was of the opinion that the report was irrevelant.

In his appeal to the Court of Special Appeals, the appellant contended that the report was admissible to show that Ketcham's description of the men was different from that given by Mrs. Duda to the police. However, the State contended then and now, that counsel for the accused failed to make a proper proffer of what he intended to prove by the introduction of the report at the time it was submitted at the trial, and that accordingly there was no issue for the Court of Special Appeals to review. The Court of Special Appeals was of the opinion that the appellant had failed to state the rule of evidence upon which he was relying to support the admissibility of the police report, and in the absence of some clear showing of a proper basis supporting the report's admissibility under the rules of evidence the trial judge should be affirmed.

We think that with regard to the issue of lack of proper proffer of the report the simple answer is the police report was in the State's possession, it was familiar with its contents, and the

substance of the report being information on the identity of the accused, spoke for itself. We do not discount the importance of a proper proffer when the evidence sought to be introduced is under challenge (*Leitch v. Anne Arundel County*, 248 Md. 611, 616, 237 A. 2d 748 (1968) ; *Fowler v. Benton*, 229 Md. 571, 575, 185 A. 2d 344 (1962) ; Maryland Rule 522 b) ; however, in the instant case the variance between the description given by the victim and that contained in the report makes obvious the purpose for its being offered into evidence. In our opinion, the question of whether it should, or should not, have been admitted into evidence depended upon its relevancy. We think it was sufficiently relevant to the question of identification to have been admitted into evidence for consideration by the jury.

The difficulty with the State's position in this case, as we see it, is that the exclusion of the report which Sergeant Gorsuch took from Ketcham goes to the very core of the State's case against the appellant. The State's case hangs by the tenuous thread of identification of the accused by the victim. The Court of Special Appeals noted :

> "* * * the substance of the report was not relevant to the issues in the case since, at most, it established that Ketcham's description of the men who entered the victim's home was different than that given by the victim of her assailants and, additionally, different from that of the appellant. We note that Ketcham's description of the men, as related in the police report, was most general and actually was consistent with the victim's description of the clothing worn by the two men. In any event, we see no error in the court's refusal to admit the police report into evidence." 3 Md. App. 231, 236, 238 A. 2d 569, 572 (1967).

We are of the opinion that the substance of the report was quite relevant to the central issue in this case, namely, the question of the identification of the accused. The State argues that the substance of the report was cumulative in character and in fact was corroborative of the testimony given by the victim in her description of the apparel in which the assailants were garbed. However, we think the substance of the report was more

than a mere rephrasing of Ketcham's direct testimony as given at the first trial and certainly was more than repetitious of the victim's testimony. Had it been merely cumulative it would not have been prejudicial to the accused to exclude it, but an examination of the report reveals a variance between the description of those who perpetrated the crime contained in the report, and that given by the victim, as well as a possible conflict with the actual appearance of the accused. We are of the opinion that the report should have gone before the jury for its consideration for whatever weight the jury might have chosen to place upon it.

The report described one of the two men seen entering and leaving the Duda Funeral Home, as being between 25 to 27 years of age, between five feet eight inches and five feet ten inches in height and weighing about 165 pounds; the other between 25 and 30 years of age, between five feet seven and five feet eight inches in height and weighing about 175 pounds. The accused was 60 years old at the time of the commission of the crime; thus there is a considerable discrepancy between the age of even the eldest suspect as given in the report and in fact. There is also a difference in the description between the eldest suspect (the accused), as described by the victim and that contained in the report. Mrs. Duda described the elder of the two as being 40 years of age, six feet tall and weighing 190 pounds. The report given to the police by Ketcham describes the elder of the two as being between five feet seven and five feet eight and between 25 to 30 years and weighing 175 pounds. As we have stated, the defendant was actually 60 years of age. The report does corroborate the victim's testimony regarding the apparel worn by the men which described them as wearing dark, full-length overcoats and slouch hats.

Perhaps the jury may have found the difference in the descriptions contained in the report, as contrasted with that given by the victim, as trivial or reconcilable, but we have no way of knowing that.

We are not here confronted with a case where the State knowingly failed to disclose evidence which it had in its possession, and which may have been helpful to the defendant, such as was presented in *Brady v. Maryland,* 373 U. S. 83 (1963), and

*Giles v. Maryland,* 386 U. S. 66 (1967). In this instance the defendant's counsel was aware of the substance of the police report and desired to get it before the jury. Although we do not have a *Brady* or *Giles* situation, none the less, responsibility of the State "to provide a fair trial under the Due Process Clause" still persists and it would appear to us to have required the admission of the report. In *Giles, supra,* Justice Fortas in a concurring opinion expressed it thus:

> "* * * The State's obligation is not to convict, but to see that, so far as possible, truth emerges. This is also the ultimate statement of its responsibility to provide a fair trial under the Due Process Clause of the Fourteenth Amendment. * * *."

> "This is not to say that convictions ought to be reversed on the ground that information merely repetitious, cumulative, or embellishing of facts otherwise known to the defense or presented to the court, or without importance to the defense for purposes of the preparation of the cases or for trial was not disclosed to defense counsel. It is not to say that the State has an obligation to communicate preliminary, challenged, or speculative information. But this is not that case. Petitioners were on trial for their lives. The information was specific, factual, and concrete, although its implications may be highly debatable. * * *." *Id.* at 98.

As we have previously stated, we do not think the report presented evidence restricted to a repetitious or cumulative nature. See also *United States v. Maroney,* 319 F. 2d 622, 627 (3d Cir. 1963), wherein the Court said:

> "This withholding by the Commonwealth of information impinging on a vital area in appellant's defense is a denial of the Due Process Clause of the 14th Amendment of the Constitution. * * *." [Citing *Brady, supra*] *Id.* at 627.

In *State v. Aubuchon,* 381 S.W.2d 807 (1964), the Missouri Supreme Court while sustaining the refusal of the trial court to admit into evidence a police officer's report concerning his

chase of the accused in flight, during which the officer lost surveillance, stated:

"* * * We hold now, that, if there is a satisfactory showing that a report or statement of a witness in the hands of the State is of such nature that *without it* the defendant's trial would be *fundamentally unfair,* then it should be produced; otherwise not. * * *." (Second Emphasis supplied.)

Insofar as the effect it may have on the right of the accused to a fair trial, we see no basic distinction between evidence the State willfully fails to disclose and that withheld because of an erroneous evaluation by the court as to its relevancy. In both instances the accused may be prejudiced by the evidence being withheld from the jury. We are persuaded that the report, for whatever weight the jury may have assigned to it, was relevant to the case and, if for no other reason than that of fundamental fairness to the accused, should have been admitted into evidence.

*Reversed, remanded for new trial; state to pay costs.*