# HOWARD MACKALL *v.* STATE OF MARYLAND

[No. 341, September Term, 1968.]

*Decided June 18, 1969.*

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Fred Warren Bennett* for appellant.

*William E. Brannan, Assistant Attorney General,* with
whom were *Francis B. Burch, Attorney General, Arthur
A. Marshall, Jr., State's Attorney for Prince George's
County,* and *E. Allen Shepherd, Jr., Assistant State's At-
torney for Prince George's County,* on the brief, for ap-
pellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant was found guilty by a jury in the Circuit
Court for Prince George's County of grand larceny of the
goods of Fredric Endres and was sentenced by the court
to three years under the jurisdiction of the Department of
Correction. He contends on this appeal that the court
erred in admitting into evidence, over his objection, prop-
erty seized from the trunk of the automobile which he
was operating at the time of his arrest.

Appellant filed a pretrial motion to suppress the evi-
dence on the ground that it had been taken by an unrea-
sonable search and seizure in violation of the Fourth
Amendment to the Federal Constitution. At the eviden-
tiary hearing on the motion held out of the presence of
the jury, Trooper G. N. Menefee was the State's only wit-
ness. He testified that he and Trooper R. G. Curbow were
assigned to a stakeout detail at the Holiday Inn in Bowie,
Maryland because there had been numerous complaints of
tampering with vehicles on the motel's parking lot; that
at 3:00 a.m. on June 3, 1968, a car occupied by two men
came onto the lot, the driver later being identified as the
appellant, and his passenger as William Nixon; that ap-

pellant remained in the car with the motor off while Nixon jimmied the doors of three vehicles with a screwdriver and rummaged through the cars; that he arrested appellant and Nixon, charging them with "tampering with a motor vehicle"; that the owners of the cars were promptly awakened and, after examining their vehicles, told the officers that nothing had been taken; and that appellant stated that the car he was driving belonged to his cousin, a Mr. Smith, "who is some place else in Delaware or another state." Trooper Menefee testified that fifteen or twenty minutes after the arrest they "inventoried" the contents of the vehicle in accordance with the policy of the State Police to protect the property of the owner of the car; that the inventory was made at the scene of the arrest while appellant remained there under guard; that in the trunk of the vehicle a suitcase was found containing personal clothing, including a number of dress shirts; that an electric typewriter and a television set were also found in the vehicle's trunk; that the police removed these items from the car and took them into custody, after which a tow truck removed the car for storage purposes; and that at the time the inventory was made, he did not know whether the property belonged to the appellant, although he noted that there was a tag on the suitcase indicating ownership in a Mr. Endres from Ohio.

On the basis of this evidence, the court denied appellant's motion to suppress. The court did not, however, state the basis for its approval of the warrantless search of the vehicle.

At the trial before the jury, Trooper Curbow testified substantially as had Trooper Menefee at the pretrial hearing and, additionally, stated that after the men were arrested for the crime of tampering with a motor vehicle, appellant told him that the car belonged to Joseph Smith, a cousin who lived in New Jersey and who was at the race track. The trooper testified that he tried to contact Joseph Smith by radio call but was unable to do so; that at the scene of the arrest, he checked the ownership of the car and found that it was licensed to a Joseph Smith

at a Seat Pleasant address, as shown by the registration card discovered in the vehicle; that after the arrest, he "inventoried" the contents of the vehicle at the scene, "since the occupants were not the owners of the vehicle," and appellant and Nixon "had no authorization to make a decision on the disposition of the car"; that the purpose of the inventory was to protect the vehicle and its contents for the owner against loss and theft; that he did not make a general search of the car but only "an inventory in compliance with our procedure"; that after listing the items found in the car, they were placed in a police cruiser and thereafter stored in the property room at police headquarters. Curbow testified that at the time of the inventory the police did not know that any of the goods taken from the trunk of the car had been stolen. It was not until the next day that the police learned that the property had been stolen from an automobile parked at the Interstate Inn in College Park and owned by Fredric Endres.

Appellant again objected to the introduction of the stolen goods in evidence. The objection was overruled.

## I

Appellant contended at the trial, as he does now, that as he was arrested for the misdemeanor of tampering with a motor vehicle—an offense proscribed by the Motor Vehicle Code, Section 208 of Article 66½ of the Maryland Code—he was, as a Maryland resident, entitled to a summons under Section 321 of the Code, in lieu of being arrested; and that consequently the search of the vehicle which he was operating, together with the seizure of the property therefrom, constituted an unreasonable search and seizure. He particularly maintains that the search cannot be justified on the inventory theory because the arrest was illegal, but even if the arrest was lawful, the search of the trunk was illegal since the police were not looking for weapons or implements by which appellant could effect an escape; and since the police knew that nothing had been taken from the vehicles on the parking lot, they were not searching for evidence of the crime.

Appellant also maintains that as he was arrested only for a motor vehicle offense, it was in any event unreasonable for the police to search the trunk of his vehicle without a search warrant.

We think it clear from the evidence that the misdemeanor of tampering with a motor vehicle was committed in the presence of the arresting officers. While that crime is created and proscribed by Section 208 of the Motor Vehicle Code, we hold that it is not an offense for which the violator may demand and receive a summons as a Maryland resident under Section 321. That Section, by its own terms, is limited in its applicability to violations relating to the regulation of traffic. Moreover, Section 324 provides that a violator does not have the right to demand and receive a summons where he "cannot identify himself to the officer making the arrest as the owner or proper custodian" of the vehicle. We thus conclude that the police properly subjected appellant to a full custody arrest for the offense of tampering with a motor vehicle, and as an incident thereof, the officers were entitled to conduct a contemporaneous search both of appellant's person, and of the property under his immediate control, including the motor vehicle which he was operating at the time of his arrest.[1] See *Knotts v. State,* 237 Md. 417; *Anthony v. State,* 3 Md. App. 129; *Lewis v. State,* 2 Md. App. 678. And while we noted in *Shelton v. State,* 3 Md. App. 394, that a police officer may not be authorized to conduct a general search every time he stops a motorist for an ordinary traffic infraction, we think the rationale of that case is here manifestly inapplicable, since tampering with a motor vehicle is neither a traffic offense nor its perpetrator an ordinary traffic offender.

But while the police were authorized to conduct a contemporaneous search incident to appellant's arrest, the testimony clearly indicates that they did not avail them-

---

1. Equally clear is the fact that the police had probable cause to believe that the offense of attempted larceny was being committed in their presence or view, for which a full custody arrest would also have been justified. See *Simms v. State,* 4 Md. App. 160.

selves of this right, but rather sought to justify their action in entering the trunk of the vehicle on the ground that they wished to inventory the contents thereof and place them in safekeeping to protect the owner against loss. In *St. Clair v. State*, 1 Md. App. 605, we held that the making of an inventory of the contents of a motor vehicle did not, under the circumstances of that case, constitute a search in the constitutional sense since the evidence clearly showed that the making of such inventory was not a subterfuge to conduct a search, but a *bona fide* attempt to safeguard the owner of the inventoried property against loss. We are satisfied under the facts of this case that the police undertook to inventory the contents of the trunk, including the items in the suitcase, for the purpose of safeguarding that property for the owner, and not for the purpose of making an exploratory search for incriminating evidence. The arresting officers testified, in effect, that they did not know that the property in the trunk was stolen. They did know, however, that the vehicle did not belong to either appellant or Nixon and they were unable at the time of the arrest to establish contact with the vehicle's owner. Under these circumstances, we think that the action of the police in inventorying the contents of the vehicle did not constitute a prohibited search in the constitutional sense but, as in *St. Clair*, was a *bona fide* attempt to safeguard the owner of the inventoried property against loss and not a subterfuge to conduct an exploratory search. See also *Harris v. United States*, 390 U. S. 234. We thus conclude that the evidence was properly introduced at the trial over appellant's objection.

Nor do we find any merit in appellant's contention that the court erred in omitting from its jury charge the substance of his requested instructions concerning the legality of the arrest, search and seizure. Assuming, without deciding, that it would be proper to give advisory instructions to the jury on the issue of the legality of the arrest, search and seizure, we think the theory of appellant's requested instructions, which we have heretofore set forth,

was not applicable to the evidence in the case; and consequently their omission from the court's charge to the jury did not constitute error.

## II

Appellant, next contends that the court erred in denying his motion, made during cross-examination of Trooper Curbow, for the production of a police report which the trooper had personally prepared. The motion was made after appellant ascertained that the trooper had testified before the Grand Jury and had a carbon copy of his own report with him in court. The court's denial of the motion was based on the ground that it was not the proper time for appellant to call for production of the trooper's police report; that appellant could "take it up later when we finish cross-examination," because the "case should be tried now and the preparation of the case beforehand and not in the midst of the trial"; that appellant didn't ask the trooper to produce the report before trial and that the trooper shouldn't be required to get it during the trial. The appellant again told the court that the trooper had the report with him in court, but no further ruling was sought or obtained by the appellant. Trooper Curbow was then cross-examined at some length by appellant, it being ascertained in the process that the police had no arrest or search warrant, that the arrest was for tampering with a motor vehicle, and that appellant was not afforded any opportunity to demand a summons in lieu of arrest. At the end of appellant's cross-examination of Trooper Curbow, he again called for the production of the police report, but the court denied the motion on the ground that he had not asked for the report previously and was not authorized to do it during the course of the trial.

Appellant contends that while the police report was not discoverable under Maryland Rule 728, it was nevertheless plainly relevant to the legality of the arrest and search and seizure and as it was available at the trial, it should have been produced.

In *Austin v. State*, 253 Md. 313, the defendant sought

to introduce a police report through his own witness, a police sergeant who had prepared the report. It was appellant's purpose—and so known to the State—to show by the report that the police had received a description of the accused from a deceased witness substantially different from that given by the victim of the crime to the police. The lower court sustained the State's objection to the admissibility of the report. The Court of Appeals held that as the State's case depended mainly upon the victim's identification of the accused, the police report contained information going "to the very core of the State's case against appellant"; that the question of the report's admissibility depended upon its relevancy and as it bore on the question of identification of the accused, it was plainly relevant and should have been submitted to the jury for its consideration. The court held that the State was responsible "to provide a fair trial under the Due Process Clause" and that the admission of the report was required since it would have been fundamentally unfair to the accused not to have had the report submitted in evidence.

We do not think that *Austin* stands as authority for the proposition that a police report in the State's possession must be turned over to the defendant whenever he claims that the report is relevant to the issues in the case. We think the applicability of the *Austin* rationale must be determined on a case-to-case basis. While it does not plainly appear from the record that appellant advised the trial court of his purpose in seeking production of the police report, it is clear that the court's refusal to order the report's production was based primarily on the ground that the motion was not timely made. Whether this determination, in light of *Austin*, was correct or not, we think that appellant's obvious purpose in seeking production of the police report was to bring out, as he did on the trooper's cross-examination, that the arrest was made for the crime of tampering with a motor vehicle, that the police had no arrest or search warrant, and did not offer appellant a summons. As we have heretofore

indicated, appellant's underlying theory of the illegality of the arrest, search and seizure was erroneous as a matter of law. We see no prejudice to appellant from the court's failure to order production of the report, and we hold that on the facts of this case, *Austin* has no application.

### III

Appellant further contends that the court erred in failing to instruct the jury, as requested by him at the conclusion of the court's charge, that his possession of the stolen goods must have been exclusive before the inference from recent possession of stolen goods gives rise to a presumption that the accused is either the thief or the receiver. He maintains that the jury could have found from the evidence that the possession of the property was not exclusive as to him since the stolen goods were found in the trunk of a car which he did not own.

The court, in its charge to the jury, after defining the offenses of grand larceny and receiving stolen goods, stated:

> "By way of advisory instructions you are advised that if you are convinced that the defendant had in his possession property that was recently stolen without any satisfactory explanation as to why it was in his possession you may infer from that that he is the thief, or on the other hand, you may not be convinced beyond a reasonable doubt that he is the thief, but you may infer and be convinced beyond a reasonable doubt that he is guilty of receiving by the fact that it was in his possession without any satisfactory explanation and the fact that it definitely was stolen."

In *Boswell and Poe v. State,* 5 Md. App. 571, it was contended, as it is here, that the court committed prejudicial error in its instructions to the jury with respect to the inference arising from recent possession of stolen goods in that the court neglected to include therein the

requirement that such possession must be exclusive. The court there charged the jury substantially in accordance with the charge given to the jury in the present case. After outlining in considerable detail the basis for the requirement that the possession be exclusive, we concluded that the court's charge satisfactorily covered this element of the offense. We think *Boswell* is dispositive of the question now raised and, accordingly, find no merit in appellant's contention. See also *Graham v. State,* 6 Md. App. 458.

*Judgment affirmed.*