## ROBERT DEE MOORE *v.* STATE OF MARYLAND

[No. 430, September Term, 1968.]

*Decided August 12, 1969.*

---

496

The cause was argued before MURPHY, C.J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Edward J. Angeletti* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Gerald A. Kroop, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Robert Dee Moore, the appellant, was convicted of murder in the first degree, without capital punishment, in the Criminal Court of Baltimore. Judge James A. Perrott, presiding with a jury, imposed a sentence of life imprisonment. He contends that his motion for judgment of acquittal of murder in the first degree should have been granted; that certain records should have been admitted into evidence; and that the trial judge committed error in his instructions on the law of self-defense and in denying the appellant's requests concerning the *voir dire* examination of jurors.

James Witherspoon, a bar owner, on West Baltimore Street, testified that about 7:30 P.M. on January 12, 1968, he was talking to Moore on the sidewalk near his premises and specifically as follows:

> "A. While I was talking to him, George Carroll came out and he walked to his left a few feet where we were standing.
>
> "Q. Let's stop there. What, if anything, did you see in George Carroll's hand when he came out of the bar?
>
> "A. He didn't have anything in his hand.
>
> "Q. He walked over to where you were standing?
>
> "A. Yes.

"Q. Who else was standing there?

"A. Moore and another fellow.

"Q. From that point, tell the Jury what happened.

"A. While we were standing there talking, Carroll came out, so he walked over where we was too. They had started an argument again.

"Q. Who started an argument?

"A. Both of them started an argument.

"Q. By name.

"A. George Carroll and Mr. Moore started arguing with each other again.

"Q. Know what they were arguing about?

"A. No.

"Q. Know who started the argument?

"A. No.

"Q. Continue.

"A. I told them 'Why don't you guys be friends and cut this,' whatever it was, 'out.' You know.

"Q. I understand.

"A. So then, George Carroll was standing there. I told him, I said 'Look, don't argue with him. Just go on home.' So, he said 'O.K.' So, George Carroll walked east on Baltimore Street. He turned around, started walking down the street.

"Q. George Carroll was walking away?

"A. Yes.

"Q. Then what happened?

"A. He had—just before—no, he had started walking away. Robert Moore had his hand in his pocket. When George Carroll started walking away, he took his hand out of his pocket, had a pistol in it.

"Q. Continue.

"A. He said 'I'm going to kill him.'

"Q. Who said 'I'm going to kill him?'

"A. Moore said he was going to kill George

Carroll. I saw the pistol. I ran in the door, ran in the doorway.

"Q. Did you go inside the bar?

"A. Standing inside, looking out the door.

"Q. Looking out?

"A. Yes. After he went past the door with the pistol, we were standing on the step.

"Q. Did you watch the entire time?

"A. Yes.

"Q. Tell us what you saw when you watched.

"A. Moore stopped him in front of the barber shop.

"Q. Stopped who?

"A. Carroll. Told him 'I told you I was going to kill you, you s.o.b.'

"Q. What, if anything, did the Defendant have in his hand?

"A. He had a pistol.

"Q. At that point, what occurred then, after he had stopped Carroll?

"A. When he stopped Carroll, after Carroll saw the pistol in his hand, he took a knife, I think it had a brown handle, took a knife out of his pocket, standing there holding it in his hand.

"Q. Then what occurred?

"A. Carroll told him 'If that's what you are going to do, go ahead, do it.' He got in a crouching position.

"Q. Who is he?

"A. Moore. He was in a crouching position. He shot him.

"Q. Did you actually see him fire the gun?

"A. Sure, I was looking right at him.

"Q. How many shots did he fire?

"A. I heard five shots.

"Q. Did Mr. Carroll take the knife out any time before Moore came up with the gun and said 'I'm going to kill you.'?

"A. He had walked away.

"Q. You saw the Defendant fire five shots at Mr. Carroll?

"A. Right.

"Q. How far was the Defendant from Carroll when he fired those five shots?

"A. About two, two and a half feet in front of him.

"Q. How far were you in feet from the Defendant and Mr. Carroll when you saw the Defendant fire those five shots?

"A. About, maybe seven or eight feet.

"Q. After the Defendant fired those five shots at a distance of two or three feet from Mr. Carroll, what, if anything, did you see then?

"A. After he fired the five shots and George Carroll just stood up. He didn't fall. Robert Moore turned, ran directly across the street.

"Q. Let's stop there. At any time before those five shots were fired by the Defendant at the deceased, did the deceased, George Carroll, in any way make a motion against the Defendant with the knife?

"A. No, because he had his pistol drawn on him.

"Q. You just said Moore, the Defendant, ran across the street?

"A. Directly across the street.

"Q. What, if anything, did Carroll do?

"A. He was in pursuit of Robert Moore.

"Q. Then what happened?

"A. When he ran across the street, he caught him, threw him down, and I just saw his hands go up.

"Q. Whose hands?

"A. George Carroll."

After Carroll chased Moore across the street, he stabbed him and then took a bottle of whiskey from his pocket,

drank some of it and then spit upon Carroll. Moore then made some comments, "There he is." "Everybody after him and I finally got him." "Yes, I did it and I have been after him a long time and I finally did it." Some witnesses supported Witherspoon's testimony, but Moore and other witnesses testified that the killing occurred while Moore was defending himself from an attack. The medical examiner's testimony showed that Carroll was shot five times, two in the arms, one in the lower abdomen, one through the face and one through the chest.

## I (Sufficiency of the Evidence)

Moore seems to concede that Witherspoon's in-court testimony would be sufficient to support a verdict of murder in the first degree under *Chisley v. State,* 202 Md. 87, 95 A. 2d 577 but argues that his testimony is not worthy of belief because a few hours after the crime he gave a report to the police, which in part said as follows:

> "I than made a attempt to stop them from arguing, but Robert Moore wouldn't listern to me, George stated to me, okay 'Spoon', I'll lister to you, and George started to walk East on Baltimore Street, where he walked in front of the Barber Shop located at 2591 West Baltimore Street. Robert Moore followed him and at this time Robert Moore, pulled a gun on George, When George walked down the street, he had placed the knife that he had in his hands back into his pocket, But upon Robert Moore pulling the Gun on him, George took the knife that he had placed in his pocket back out, and turned and started towards Robert Moore, at that time Robert Moore started shooting at George, Robert fired five times at George. Robert Moore than turned and started running North across Baltimore Street, towards the North side of the Street, with George running after him. George caught Robert Moore in front of 2566 W. Bal-

timore Street and they started fighting. I didn't go over to look because Robert Moore had a pistol. Both George and Robert Moore fell to the ground, than I saw Robert Moore get up and walk around. Than he drank a bottle of whiskey, which he had and threw the bottle on the ground and stated 'Yes, I did it, I'm glad that I did it'. Than after that Robert Moore walked over and spit on George as he was laying on the ground. By that time the Police came and locked up Robert Moore." [1]

Although Witherspoon's statement to the police was more favorable to Moore than his in-court testimony, Witherspoon stated that what he said in court was true and what he told the police was not entirely accurate because he was in a hurry to get home and because they did not ask him specific questions as was done in court. Ignoring the fact that some of the other witnesses tended to support the testimony of Witherspoon, we think that that testimony alone was sufficient to support the verdict. The difference in the statements does not bring the case within the rule of *Kucharczyk v. State,* 235 Md. 334, 201 A. 2d 683 which has no application to out-of-court statements. *Alexander v. State,* 4 Md. App. 214, 218, 242 A. 2d 180. Since it was the trial court's duty to deny the motion for acquittal if there was any evidence legally sufficient for the jury to find the defendant guilty beyond a reasonable doubt, *Culver v. State,* 1 Md. App. 406, 409, 230 A. 2d 361 and since there was some such evidence, we see no error in the action of the trial judge in denying the motion to acquit.

## II

Moore alleges error in the refusal of the trial court to admit into evidence an alleged FBI report showing that the victim had been convicted of manslaughter on December 17, 1955, in Raleigh, North Carolina. Under the prin-

---

1. The report is quoted as shown in the record.

ciples we discussed in *Barger v. State,* 2 Md. App. 565, 568-69, 235 A. 2d 751, the court admitted Moore's testimony that he knew of this conviction at the time of the affray. Moore contends, in oral argument, that since *Austin v. State,* 253 Md. 313, 252 A. 2d 797 ruled that relevant police reports are admissible this report should have been admitted to support his testimony. In the instant case, the record was simply offered into evidence without any testimony as to its origin or where it came from, and neither was it authenticated in any other manner. We do not think the Court of Appeals in *Austin, supra* waived these requirements. More importantly we do not believe that *Austin, supra,* stands for the general proposition that police reports are admissible in every case but only as stated therein where necessary for "fundamental fairness" to the accused. We do not think it applies here.

### III

Moore contends that the trial judge committed error in "limiting his instructions on the law of self-defense." There was no objection to the instructions as given and the exact instructions requested by Moore are not a part of the record before us, and, therefore, under Maryland Rule 756 Moore has no right to require us to review the instructions. In accordance with the rule, however, we have read the instructions regarding self-defense and do not see any plain error therein.

### IV

Moore requested that his counsel be permitted to examine the jurors on *voir dire* under Maryland Rule 745 which permits such examinations to be conducted by either the court or the attorney in the discretion of the trial judge. He contends that an examination by counsel is permitted in federal and other state courts and in some courts within the State of Maryland, but we fail to see how this would make the trial judge's action an abuse of discretion when the rule specifically permits what he did. His contention that counsel's questions would more read-

ily elicit prejudice than the judge's is a matter, we think, that should be directed towards the rules committee or to the legislature rather than to this Court.

Moore further alleges error in the failure of the trial judge to ask, on the *voir dire,* three questions concerning firearms. He requested that the jurors be asked the following three questions:

> "Do you intend to turn in any firearms which you now have in your home?"
>
> "Do you harbor any prejudice or ill feeling against anyone who owns or possesses a firearm?"
>
> "Have you written or contacted your Congressman, State Legislator or City Councilman or governmental agency advocating the banning or licensing of firearms?"

The trial judge asked the following question only on this subject:

> "Do you harbor any prejudice against firearms or any prejudice or ill feeling against anyone who owns or possesses firearms? If the answer is yes, will you please rise."

In *Borman v. State,* 1 Md. App. 276, 279, 229 A. 2d 440 and *Carder v. State,* 5 Md. App. 531, 537, 248 A. 2d 495 we reviewed the authorities and stated the purpose of *voir dire* examinations is to ascertain the existence of cause of disqualification. We think the trial judge's question was quite adequate for this purpose.

*Judgment affirmed.*