**Rothe v. State, No. 2454 of the 2018 Term, Opinion by Moylan J.**

**KUCHARCZYK V. STATE** AND THE LEGAL SUFFICIENCY OF EVIDENCE – THE CONTENTIONS – AN UNADORNED MOTION FOR JUDGMENT – OVERWHELMINGLY SUFFICIENT EVIDENCE OF GUILT – **KUCHARCZYK**'S ATTACK ON LEGAL SUFFICIENCY – **BAILEY**'S COUNTERATTACK ON **KUCHARCZYK** – **KUCHARCZYK** GOES ON POST-**BAILEY** – THE SOURCE OF THE PROBLEM – **REQUIESCAT IN PACE** – AN UNPRESERVED CONTENTION

Circuit Court for Baltimore City
Case No. 118120008

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2454

September Term, 2018
_____

WAYNE ROTHE

v.

STATE OF MARYLAND
_____

Meredith,
Gould,
Moylan, Charles E., Jr.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Moylan, J.
_____

Filed: August 2, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Like a troubled spirit adrift on Walpurgis Night, an almost forgotten relic of long repudiated caselaw eerily resurfaces to haunt the convictions of the appellant, Wayne Rothe, for second-degree and fourth-degree burglary, for the malicious destruction of property, and for theft in the Circuit Court for Baltimore City by a jury, presided over by Judge Althea M. Handy. This holding should lay to rest that misbegotten ghost.

## The Contentions

On this appeal, the appellant raised two contentions. He claims

1. that the State's evidence was legally insufficient to sustain the convictions, and

2. that Judge Handy erroneously imposed separate sentences for second-degree burglary and for the malicious destruction of property.

## An Unadorned Motion For Judgment

The only significant one of those contentions is that the State's evidence was not legally sufficient to support the convictions. We hold, on the contrary, that it was abundantly sufficient. At the end of the State's case (which was also the end of the entire case), the appellant's Motion for Judgment of Acquittal was unenlightening. The argument was baldly conclusory.

Your Honor, at this time I'll make a motion for judgment of acquittal. I'll submit on argument, <u>it's really based on credibility on Mr. Dowling</u> the way I see it.

THE COURT: Right.

[DEFENSE COUNSEL]: It's a circumstantial case but <u>it's still</u>, you know, <u>based on his credibility</u>. So I'll submit on argument other than that.

THE COURT: Okay. I'll deny your motion then.

(Emphasis supplied).

## Overwhelmingly Sufficient Evidence Of Guilt

Not a word was said to substantiate that challenge to the witness's credibility. The trial itself had been equally uneventful. The burglary and theft victim, Michael Shawn Dowling, lived at 2132 Maisel Street in Baltimore City. He rented a garage at the rear of that property from his neighbor, Joel Navarro. He regularly kept the garage locked and he kept some valuable tools inside the garage, including 1) a large black toolbox with between $300 and $400 worth of tools in it; 2) a pressure washer; and 3) a generator. Mr. Dowling and the appellant were well acquainted with each other. The appellant lived in a "pop-up camper," which Mr. Dowling permitted him to park in his driveway at 2132 Maisel Street.

The burglary occurred on March 8, 2018, in the mid-afternoon. At approximately 2:30 p.m., Mr. Dowling went to pick up his daughter from school. Along the way, he saw the appellant walking up Hollins Ferry Road. They chatted briefly. The appellant asked Mr. Dowling where he was going. Mr. Dowling explained that he was on his way to pick up his daughter at school. When Mr. Dowling returned home with his daughter at approximately 3:30 p.m., he noticed that the door to his garage had been kicked in. The lock at the bottom was gone. All of Mr. Dowling's tools, moreover, were missing.

That testimony would have placed the burglary within the hour of 2:30 p.m. to 3:30 p.m. Actually, the time frame was tighter than that. Detective James Frauenhoffer of the Baltimore City Police Department was assigned to the Regional Auto Theft Task Force. He was aware of an outstanding arrest warrant for the appellant. On March 8, 2018, at about 3:00 p.m., he received a phone call from someone at the Real Scrap scrapyard,

2

indicating that the appellant was then at that location. Detective Frauenhoffer immediately responded. Real Scrap was just about a block away from 2132 Maisel Street. Detective Frauenhoffer explained the nature of the scrapyard business:

> THE WITNESS: Scrap yards take metal and they purchase it from people when they deliver to the location, again, it could be any type of metal, roofing material, tools, cars, half cars, anything, but they take it there to drop off so they can receive money for the weight of metal.

When the appellant saw Detective Frauenhoffer approaching, he turned and ran. A foot chase by several Baltimore City and Baltimore County officers through some nearby heavily wooded areas followed, ultimately ending after the appellant and one of the pursuing officers fell together into a stream. The appellant had brought to Real Scrap and Detective Frauenhoffer recovered all of the property that had shortly before been taken from Mr. Dowling's garage. The property was subsequently identified by Mr. Dowling. At Mr. Dowling's, Detective Frauenhoffer also noted where the garage door had been kicked in.

## <u>Kucharczyk</u>'s Attack On Legal Sufficiency

The appellant did not take the stand, nor did he offer any witnesses or other evidence. He never so much as offered an explanation to the police as to what he was doing at Real Scrap with Mr. Dowling's property. It is difficult to imagine a burglary and theft case more open and shut than this. It was at this point in the analysis that the ghost of <u>Kucharczyk v. State</u>, 235 Md. 334, 201 A.2d 683 (1964), was invoked in the appellant's brief. The challenge was to the legal sufficiency of the evidence, as a matter of law.

> <u>The evidence is insufficient to sustain the convictions.</u> The State's circumstantial case relied entirely on Mr. [D]owling's claim that the garage

3

had been broken into and that appellant did not have his permission to enter the garage and take the items. However, <u>Mr. [D]owling's testimony was inherently incredible, and was therefore insufficient.</u> <u>See Kucharczyk v. State</u>, 235 Md. 334, 337 (1964).

(Emphasis supplied).

It is here that we encounter, as legions of cases have encountered over the past 55 years, the massive disconnect between the case of <u>Kucharczyk v. State</u>, with its microscopically narrow holding that has never been repeated, and the so-called <u>Kucharczyk</u> Doctrine, a bloated attack on the legal sufficiency of evidence generally and based ostensibly on the <u>Kucharczyk</u> case. In the actual case, the State's entire case of guilt had consisted of the uncorroborated testimony of a single witness whose testimony was rent by unresolved contradictions about the very happening of the crime itself. The issue was not credibility <u>per se</u>. It was rather the utter absence of any plausible assertion that the crime had even taken place.

In the years since 1964, however, the defense bar has created a wildly exaggerated <u>Kucharczyk</u> Doctrine that has taken on a mythic life of its own. The doctrinal mantra is that any significant attack on the credibility of a State's witness will serve to exclude that witness's testimony from evidence and thereby erode the legal sufficiency of the State's case by diminishing it to nothing. In his brief, albeit not before Judge Handy, the appellant argued that Mr. Dowling's testimony was subject to such exclusion by virtue of various "inconsistencies, weaknesses, and deficiencies," and, therefore, could not be relied upon to prove the appellant's guilt. The appellant argued:

> After purportedly finding the garage door kicked in, Mr. Dowling did not call the police on March 8. He testified, however, that within an hour, that same

day, the police went to his home. Detective Frauenhoffer, on the other hand, testified that he had tried, "with negative results," to contact Mr. Dowling on March 8, and was only able to speak with Mr. Dowling the next day, March 9. Additionally, Mr. Dowling testified that he never gave appellant permission to enter the garage. But he also told police that the camper in which appellant was staying obtained electricity from an electrical outlet in the garage. <u>In the face of all these inconsistencies, weaknesses, and deficiencies, Mr. Dowling's testimony cannot be relied on</u> to prove beyond a reasonable doubt that appellant broke into the garage and took the tools without Mr. Dowling's own involvement and permission. <u>As such, reversal is required.</u>

(Emphasis supplied).

<u>Kucharczyk v. State</u>, however, never held any such thing and the so-called <u>Kucharczyk</u> Doctrine, of course, has no provenance beyond <u>Kucharczyk v. State</u> itself. The heart of the problem has become one not of dealing with the <u>Kucharczyk</u> case itself but with its post-<u>Kucharczyk</u> mantra. The so-called <u>Kucharczyk</u> Doctrine has never actually prevailed, but its propaganda impact has remained a force to be reckoned with. In the caselaw, it has become an unusual phenomenon.

## Bailey's Counterattack On <u>Kucharczyk</u>

This larger <u>Kucharczyk</u> phenomenon was before this Court in 1972, with its exaggerated notion that witness credibility was not an issue of fact for the jury or even the trial judge but could easily be transformed into a foreclosing issue of law for the reviewing appellate court. We thought we had then and there laid that argument indisputably to rest in <u>Bailey v. State</u>, 16 Md. App. 83, 294 A.2d 123 (1972). Apparently it has become necessary to repeat the obsequies.

In <u>Bailey</u> we set out the proper context for making an assessment of testimonial credibility in a criminal case.

Trial testimony frequently is replete with contradictions and inconsistencies, major and minor. It is the quintessential approach of the Anglo-American trial system to rely fundamentally upon cross-examination, upon the introduction of prior inconsistent statements, upon impeachment devices generally, upon sequestration, upon oral argument to ferret out and to highlight such contradictions if and when they exist. It is then at the very core of the common law trial by jury (and its counterpart of a court sitting as a jury) to trust in its fact finders, after full disclosure to them, to assess the credibility of the witnesses and to weigh the impact of their testimony.

16 Md. App. at 93–94 (emphasis supplied).

Bailey explained that "[t]he extreme and peculiar facts of Kucharczyk produced a limited departure from that fundamental approach." 16 Md. App. at 94. The conviction in Kucharczyk was based exclusively on the testimony of the sixteen-year-old victim of the crime, with a full scale I.Q. of only 56, whom a defense psychologist testified was incompetent to testify. Although the victim ultimately testified that the crime had occurred, he had testified on no fewer than three other occasions that it had never occurred. The Court of Appeals characterized those sworn denials of the very occurrence of the corpus delicti of the crime by the only witness to the very occurrence of the corpus delicti.

On direct examination the boy twice testified that nothing happened in the public lavatory after the appellant gave him two drinks. On cross examination, he testified that nothing happened in the garage. Thus there were unqualified statements by the prosecuting witness that the crime for which the appellant was convicted never in fact occurred.

235 Md. at 337–38 (emphasis supplied).

To the extent to which there might remain some spark of vitality in the ashes of Kucharczyk, Bailey limned out the austere limits:

[T]he doctrine [is] confined to unresolved contradictions within a single witness's trial testimony as to the central issue of the case . . . .

6

16 Md. App. at 95. That sui generis fact pattern has, for the last 55 years at least, never repeated itself. For the broader Kucharczyk Doctrine which he urges upon us, the appellant can cite support neither in the caselaw nor in the academic literature. Bailey commented:

> Some appreciation of the limited utility of the so-called Kucharczyk doctrine may be gathered from the fact that it was never applied pre-Kucharczyk in a criminal appeal and it has never been applied post-Kucharczyk in a criminal appeal.

16 Md. App. at 94 (emphasis supplied). It was perilously short-lived.

Notwithstanding that limited utility, if any, of the so-called doctrine, the life of Kucharczyk has nonetheless been amazing for the number of occasions on which it has been invoked and for the equal number of situations in which it has been invoked in vain. Its popularity has strangely never been diminished by its complete and utter ineffectiveness. In its ability to punch above its weight, the case has enjoyed inexplicable cachet. It seems to be something to say when you have nothing to say.

> By way of antidote, Bailey assessed its well nigh universal inapplicability:

> Kucharczyk does not apply simply because a witness's trial testimony is contradicted by other statements which the witness has given out of court or, indeed, in some other trial.[1]

---

[1] Citing Brooks v. Daley, 242 Md. 185, 191–192, 218 A.2d 184 (1966); Edwardsen v. State, 243 Md. 131, 137–138, 220 A.2d 547 (1966); Wilson v. State, 261 Md. 551, 556–558, 276 A.2d 214 (1971); Alexander v. State, 4 Md. App. 214, 218, 242 A.2d 180 (1968); Moore v. State, 7 Md. App. 495, 502, 256 A.2d 337 (1969); Jones v. State, 10 Md. App. 420, 428, 270 A.2d 827 (1970); Tumminello v. State, 10 Md. App. 612, 616, 272 A.2d 77 (1971); Sun Cab Company v. Carter, 14 Md. App. 395, 407, 287 A.2d 73 (1972).

7

. . . Nor does <u>Kucharczyk</u> apply where a witness's trial testimony contradicts itself as to minor or peripheral details but not as to the core issues of the very occurrence of the <u>corpus delicti</u> or of the criminal agency of the defendant.[2]

. . . Nor does <u>Kucharczyk</u> apply where the testimony of a witness is 'equivocal, doubtful and enigmatical' as to surrounding detail.[3]

. . . Nor does <u>Kucharczyk</u> apply where a witness is forgetful as to even major details or testifies as to what may seem improbable conduct.[4]

. . . Nor does <u>Kucharczyk</u> apply where a witness is initially hesitant about giving inculpatory testimony but subsequently does inculpate a defendant. [5]

. . . Nor does <u>Kucharczyk</u> apply where a witness appears initially to have contradicted himself but later explains or resolves the apparent contradiction.[6]

. . . Nor does <u>Kucharczyk</u> apply where a State's witness is contradicted by other State's witnesses.[7]

---

[2] Citing <u>Bell v. State</u>, 2 Md. App. 471, 472, 235 A.2d 307 (1967); <u>Poff v. State</u>, 3 Md. App. 289, 292–293, 239 A.2d 121 (1968); <u>Chesley v. State</u>, 3 Md. App. 588, 596, 240 A.2d 342 (1968); <u>Eley v. State</u>, 4 Md. App. 230, 234, 242 A.2d 175 (1968); <u>Rasnick v. State</u>, 7 Md. App. 564, 568, 256 A.2d 543 (1969); <u>Lindsay v. State</u>, 8 Md. App. 100, 103, 258 A.2d 760 (1969); <u>Gardner v. State</u>, 8 Md. App. 694, 700–701, 261 A.2d 799 (1970); <u>Dorsey v. State</u>, 9 Md. App. 80, 87, 262 A.2d 591 (1970); <u>Pinkney v. State</u>, 9 Md. App. 283, 295, 263 A.2d 871 (1970); <u>Hunt v. State</u>, 12 Md. App. 286, 292, 278 A.2d 637 (1971); <u>Crenshaw v. State</u>, 13 Md. App. 361, 372, 283 A.2d 423 (1971).

[3] Citing <u>Thompson v. State</u>, 5 Md. App. 191, 196–197, 245 A.2d 903 (1968).

[4] Citing <u>Gunther v. State</u>, 4 Md. App. 181, 184–185, 241 A.2d 907 (1968).

[5] Citing <u>Wilkins v. State</u>, 239 Md. 692, 693, 211 A.2d 308 (1965).

[6] Citing <u>Wilson v. State</u>, 8 Md. App. 653, 674, 262 A.2d 91 (1970).

[7] Citing <u>Scott v. State</u>, 2 Md. App. 709, 713–715, 237 A.2d 61 (1968); <u>Tillery v. State</u>, 3 Md. App. 142, 148, 238 A.2d 125 (1968); <u>Gunther v. State</u>, <u>supra</u>; <u>Hunt v. State</u>, <u>supra</u>.

. . . Nor does <u>Kucharczyk</u> apply where a State's witness is contradicted by defense witnesses.[8]

. . . Nor does <u>Kucharczyk</u> apply where a witness does contradict himself upon a critical issue but where there is independent corroboration of the inculpatory version.[9]

16 Md. App. at 95–97.

These myriad inapplicabilities highlight the distinction between infinite varieties of damaged and impeached credibility, on the one hand, and the rare, rare case of truly inherent incredibility, on the other hand. The insidious effect of the <u>Kucharczyk</u> Doctrine is in its deliberate effort to blur the distinction by simply ignoring the numerous situations in which exclusion, as a matter of law, would not apply notwithstanding some significant challenge to credibility.

Syllogistically, the logical fallacy is in the lack of truth in the minor premise: All A calls for exclusion, as a matter of law; B is an instance of A; Ergo, B calls for exclusion, as a matter of law. The fallacy is that B, as a matter of fact, is almost never an instance of A.

After cataloging the manifold inapplicabilities, <u>Bailey</u> concluded:

In each of those situations, our system of jurisprudence places <u>reliance on the fact finder</u> to take contradictions or equivocations properly into account and then to make informed judgment <u>in assessing a witness's credibility and in weighing that witness's testimony.</u>

16 Md. App. at 97 (emphasis supplied).

---

[8] Citing <u>Johnson v. State</u>, 3 Md. App. 219, 222, 238 A.2d 295 (1968).

[9] Citing <u>Tucker v. State</u>, 237 Md. 422, 424, 206 A.2d 691 (1965); <u>Chesley v. State</u>, <u>supra</u>.

9

**<u>Kucharczyk</u> Goes On Post-<u>Bailey</u>**

With that filing of <u>Bailey v. State</u> 47 years ago, we felt confident that the so-called <u>Kucharczyk</u> Doctrine would not raise its head again. We were overoptimistic. The invocation of the <u>Kucharczyk</u> Doctrine by defense counsel, civil as well as criminal, has continued unabated. By the same token, the rejection of the <u>Kucharczyk</u> Doctrine has also continued unabated. Seventeen years later, in <u>Vogel v. State</u>, 315 Md. 458, 554 A.2d 1231 (1989), Judge Orth noted for the Court of Appeals:

> Although Vogel does not specifically refer to <u>Kucharczyk v. State</u>, 235 Md. 334, 201 A.2d 683 (1964), it seems that <u>he would have its teachings reach out to include the proposition that conflicting or impeachable testimony is so unreliable as to be entitled to no weight. Kucharczyk does not remotely stand for that proposition.</u>

315 Md. at 471 n.6 (emphasis supplied).

In <u>Pittman v. Atlantic Realty</u>, 359 Md. 513, 546, 754 A.2d 1030 (2000), Judge Rodowsky noted that from the filing of <u>Bailey v. State</u> (1972) "to date, no opinion of this Court or of the Court of Special Appeals has encountered a set of facts that justified applying the <u>Kucharczyk</u> approach." Indeed, he pointed out that the so-called <u>Kucharczyk</u> Doctrine would be even less efficacious in civil cases than it was in criminal cases.

> Although the more recent Maryland cases that have rejected an argument that contradictory evidence is legally insufficient have been criminal cases, <u>the restrictions that Maryland appellate courts have put on the reach of Kucharczyk in criminal cases would seem to apply with greater force in civil cases.</u> Inasmuch as the standard of proof in civil cases is lesser than in criminal, internally contradictory trial testimony should less readily be found legally insufficient in civil than in criminal matters.

359 Md. at 547 (emphasis supplied). <u>See also Owens-Illinois, Inc. v. Hunter</u>, 162 Md. App. 385, 394, 875 A.2d 157 ("More recently, the Court of Appeals has suggested that, whatever

10

continuing vitality the <u>Kucharczyk</u> doctrine may have in criminal cases, it seems to be far less applicable in civil cases because the lower standards of proof could tolerate less consistent testimony."), <u>cert. denied</u>, 388 Md. 674, 882 A.2d 287 (2005).

The drum-beat went rhythmically on. <u>See, e.g.</u>, <u>Montgomery v. State</u>, 17 Md. App. 119, 127, 300 A.2d 218, <u>cert. denied</u>, 269 Md. 763 (1973); <u>Grady v. State</u>, 24 Md. App. 85, 87–90, 329 A.2d 726 (1974), <u>aff'd</u>, <u>State v. Grady</u>, 276 Md. 178, 345 A.2d 436 (1975); <u>Wright v. State</u>, 24 Md. App. 309, 311–12, 330 A.2d 482 (1975); <u>Walker v. State</u>, 53 Md. App. 171, 174–78, 452 A.2d 1234 (1982); <u>Smith v. State</u>, 302 Md. 175, 182–83, 486 A.2d 196 (1985); <u>Hounshell v. State</u>, 61 Md. App. 364, 380–81, 486 A.2d 789, <u>cert. denied</u>, 303 Md. 42, 491 A.2d 1197 (1985); <u>Fuget v. State</u>, 70 Md. App. 643, 654–55, 522 A.2d 1371 (1987); <u>Cooley v. State</u>, 157 Md. App. 101, 117–118, 849 A.2d 1026 (2004), <u>rev'd</u>, 385 Md. 165, 867 A.2d 1065 (2005); <u>Brown v. State</u>, 182 Md. App. 138, 182–84, 957 A.2d 654 (2008); <u>Marcantonio v. Moen</u>, 406 Md. 395, 410, 959 A.2d 764 (2008); <u>Turner v. State</u>, 192 Md. App. 45, 81–83, 993 A.2d 742 (2010). These inexplicably persistent reappearances could readily provide a theme for Bram Stoker.

## The Source Of The Problem

The protracted life of the <u>Kucharczyk</u> Doctrine may, however, have served a useful purpose. In law it can sometimes be helpful if a perplexing problem is allowed to marinate. Only then, sometimes, does its essential nature become clear. Look past the details. They can be distracting. In most basic terms, what are the fundamental principles in play? From time immemorial, the assessment of testimonial credibility has always been the fundamental responsibility of the factfinder, jury or trial judge, as a matter of fact. It is not

and never was the function of appellate review, as a matter of law. We begin with that as an axiomatic truth.

In 1964, the extreme factual circumstances in a rare case that has not been replicated in 55 years was the occasion for what seemed to be a limited and narrow departure from that basic allocation of responsibility. In Kucharczyk, moreover, the Court of Appeals was not really assessing credibility as such. It was analyzing, rather, whether a single shred of contradictory testimony could qualify as a piece of probative evidence. That, of course, is a proper appellate function, as a matter of law. The problem was that the analysis was operating right at the borderline between an issue of fact and an issue of law. A blurred boundary is by its very nature ambiguous and one should be very cautious about making unambiguous pronouncements from such an unsure launching pad. The very discussion of the proper legal issue inevitably and necessarily included some mention of credibility, ordinarily a factual issue. From such a line-straddling context, it is inevitable that resourceful attorneys will cherry-pick a word here or a phrase there and then reinsert those words and phrases into far different and opportunistic contexts. It is a rhetorical stratagem that comes with the territory.

In an extreme situation such as Kucharczyk, something that was accepted as inherently or intrinsically incredible did not even call for an assessment of credibility by a factfinder. The Court was measuring legal sufficiency, as a matter of law. It was not deciding credibility, as a matter of fact. The clever rhetoricians who have since promulgated the so-called Kucharczyk Doctrine, however, were able to take any passing allusion to or mention of credibility out of a context, where credibility was not the issue,

and to create out of those very words a so-called doctrine dealing basically with credibility. In the course of taking any reference to inherent credibility out of context, they sought to transform any significant attack on credibility into a question of law for the appellate court rather than leave it as a question of fact for the factfinder.

It has been a fallacious effort, but a clever one. What was posited as a proper legal question of what to do with inherent incredibility was misused to embrace a wide variety of unspoken factual questions determining what actually is inherent incredibility. That is the essential disconnect between Kucharczyk v. State and the Kucharczyk Doctrine. The disconnect can easily be missed, however, because it is subtle. The Kucharczyk Doctrine blithely assumes that damaged credibility is inherent incredibility and proceeds automatically to the exclusionary sanction.

The insidious impact of the Kucharczyk Doctrine has been in its attempt to take any significant impeachment of testimonial credibility, of a dozen possible variations, and then to take the assessment of that challenged credibility out of the hands of the factfinder, who ordinarily assesses it as a matter of fact, and to transfer it to the appellate courts, as they measure the legal sufficiency of the evidence, as a matter of law. That is a tectonic shift in the allocation of adjudicative responsibility. The determination of what is inherently incredible should remain with those whose primary job it is to assess testimonial credibility.

More broadly, what are we saying? Unanchored words and phrases can make for a treacherously unstable launching pad. Even modest shifts on the lift-off platform can produce widely divergent trajectories. The "inherent incredibility" in Kucharczyk v. State

is not the "inherent incredibility" the appellant urges upon us in the present case and they do not, therefore, propel us to the same destination. They might each be labeled "inherent incredibility" but they are not the same "inherent incredibility," and that is the critical flaw in the appellant's argument. It is, moreover, the essential flaw in most evocations of the so-called Kucharczyk Doctrine. The implicit major premise of that doctrine is not a constant. The launching pad is, in a word, unstable. Stare decisis, like the Aristotelian syllogism, requires exactitude.

## Requiescat In Pace

The simple message of this opinion is that the so-called Kucharczyk Doctrine, if it ever lived, is dead. It has been dead for a long time. Forget it. Damaged credibility is not necessarily inherent incredibility. That is all that needs to be said.

## An Unpreserved Contention

Immediately after the jury announced its verdicts, Judge Handy proceeded to sentencing. For his crime of second-degree burglary, the appellant received a sentence of twelve years. The appellant was also sentenced to a term of 60 days for the malicious destruction of property. That sentence was to run concurrently with the twelve-year sentence for burglary.[10] The appellant now contends that the conviction and the sentence for the malicious destruction of property should have merged into the conviction for second-degree burglary. He predicates his brief argument in support of that contention not on the theory that the two offenses are the "same offense" pursuant to the required elements

---

[10] The appellant was also sentenced to a term of six months for theft. That sentence, however, is irrelevant to our consideration of the merger contention now before us.

14

test and not upon the "rule of lenity." His predicate is based exclusively on the highly questionable and essentially ambiguous notion of "fundamental fairness."

At sentencing, the appellant raised no question with respect to merger or non-merger. Ordinarily, the lack of any objection would mean that nothing has been preserved for appellate review and that would end our consideration of this contention. Appellant's counsel, moreover, affirmatively agreed that merger was not called for. In speaking first with the prosecutor, Judge Handy noted, "Malicious destruction, that wouldn't merge." The judge then addressed defense counsel, who agreed that the burglary and malicious destruction of property counts did not merge.

> [Defense counsel], <u>do you agree count that the only count that merges is Count 2 [fourth-degree burglary]</u> merges into Count 1 [second-degree burglary]?
>
> [DEFENSE COUNSEL]: <u>Yes</u>, I believe that's --
>
> THE COURT: Okay.
>
> [DEFENSE COUNSEL]: -- I believe that's true, Your Honor, because <u>there would be elements in malicious destruction and theft that aren't</u> --
>
> THE COURT: Okay.
>
> [DEFENSE COUNSEL]: -- <u>necessary for the burglary. So I do agree with that.</u>

(Emphasis supplied).

Under no theory urged upon us by the appellant can we agree that the merger issue is properly before us for review. <u>Pair v. State</u>, 202 Md. App. 617, 623–25, 643–49, 33 A.3d 1024 (2011), <u>cert. denied</u>, 425 Md. 397, 41 A.3d 571 (2012); <u>Potts v. State</u>, 231 Md. App. 398, 414, 151 A.3d 59 (2016). Therefore, we shall not review it.

15

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**