No. 25264.

The People of the State of Colorado v. Arthur Eugene Godinas a/k/a Arthur E. Godinas and Cynthia Joyce Algien.
(490 P.2d 945)

Decided November 22, 1971.

CARL PARLAPIANO, District Attorney, Tenth Judicial District, DANIEL J. SEARS, Deputy, for plaintiff-appellant.

ROLLIE R. ROGERS, State Public Defender, J. D. MAC-FARLANE, Chief Deputy, DAROL C. BIDDLE, Deputy, for defendants-appellees.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THE defendants, Arthur E. Godinas and Cynthia Joyce Algien, were arrested and charged with possession of narcotic drugs and conspiracy to possess narcotic drugs. Defendants filed pre-trial motions to suppress the evidence seized at or about the time of their arrest. This motion was granted and consequently the People bring this interlocutory appeal challenging the correctness of this ruling.

The findings, as supported by the record, reflect that at about 8:00 P.M., several officers from the Pueblo Police Department and the U.S. Custom's Bureau with a warrant searched the home of the parents of one Parker and therein seized narcotic drugs. The validity of this

search and seizure is not here in question. Parker's parents indicated that Parker had not been living with them but might be found at a place called "The Hilton" to which the police then proceeded. In this regard, we note that there is substantial evidence to support the trial court's finding that "The Hilton" was a "house," and not an apartment, rooming, or boarding house, as asserted by the People.

As the police approached "The Hilton" a resident emerged. The officers did not inform him that they were looking for Parker, nor did they ask permission to enter the house. Finding the front door ajar, two officers entered the house, and were in an area described as the foyer. The two officers approached an adjacent closed door and one knocked on the door of what was described as the living room, whereupon defendant Algien said "come in." At the suppression hearing, she explained that she had assumed that a resident of the house had knocked.

Once the officers were in the living room, they identified themselves and stated that they were looking for Parker. At this point one of the officers observed defendant Algien, seated 15 to 20 feet from him, holding a cellophane wrapper in which there appeared to be about 5 hand-rolled white cigarettes. From his training and experience he suspected these to be marijuana cigarettes. He also recognized defendant Godinas as a person whom an informer had at one time identified as possibly trafficking in narcotics. After asking defendant Algien what she had in her hand, both defendants were placed under arrest and advised of their rights. The cigarettes and plastic container which fell to the floor after the arrest were seized as evidence, and defendants were subsequently charged as noted above.

At the suppression hearing the trial court granted the motion to suppress under the Fourth and Fourteenth Amendments to the United States Constitution and Ar-

394

ticle II, Section 7 of the Colorado constitution. We agree
with the trial court's ruling.

I.

■ The People argue that the defendants have no
standing to challenge the probable cause to arrest
Parker. This statement begs the question. We assume,
*arguendo,* the police had probable cause to arrest
Parker. But the test here is whether the officers' en-
trance into the house was proper. Defendants were
legitimately on the premises and the evidence seized is
proposed to be used against them, not Parker. Conse-
quently, they have standing to question the legality of
the seizure, and thus, the legitimacy of the presence of
the police in the house. *Jones v. United States,* 362 U.S.
257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). *See also People
v. Towers,* 176 Colo. 295, 490 P.2d 302.

II.

■ The People contend that the officers did not need
a search warrant to merely inquire as to Parker's where-
abouts, and, in any event, that they could not have pro-
cured such a warrant since under Crim. P. 41(b), that
may be issued only to search for and seize property, not
persons. This argument fails to take cognizance of the
fact that the police made no inquiry for Parker prior to
entry. They did not ask the person leaving the premises
whether they knew Parker or whether he was inside.
The evidence supports the trial court's finding that the
officers entered through the front door which was ajar,
without right and that before entering they did not
knock and announce their purpose. The knock on the
interior door was after the illegal entry, and made with-
out announcing identity and purpose.

In *People v. Lujan,* 174 Colo. 554, 484 P.2d 1238 (1971),
we enunciated the principle that even with a valid war-
rant, before police officers attempt a forced entry into
a house, they must first identify themselves and make
their purpose known. We note parenthetically that
forceful entries need not involve the actual breaking

of doors and windows, but may include merely entries made without permission. *See Keiningham v. United States*, 287 F.2d 126 (D.C. Circ. 1960). Consequently, assuming *arguendo* that the police could have legitimately entered the house, the suppression of the evidence was compelled unless the method of entry was justified under the exceptions noted in the *Lujan* case, *supra*.

In the instant case none of the exceptions apply. There obviously could not have been any expressly authorized entry without prior announcement. There was no evidence to indicate that the police might reasonably have believed that their purpose at the front door was already known to those within, so it cannot be inferred or suggested in this case that announcement would have been a useless gesture. Additionally, there was no danger of destruction of evidence as the police had already seized that at Parker's parents' home. Finally, there was no evidence that Parker was either armed or dangerous, nor was there evidence that he knew he was being sought by the police and might try to escape. On the latter point, the record indicates that there were as many as seven officers present — some outside, one who went in and covered the upstairs bedrooms while two officers went to the living room door.

Consequently, even assuming, as we have, that the officers could have under some circumstance legitimately entered the house, any such supposed legitimate entry was utterly vitiated by the method of entry. Under such circumstances the evidence observed in plain view by the officers was tainted, could not have been used as the basis for probable cause to arrest, could not have been seized as incident to a lawful arrest, and therefore, was properly suppressed. *See People v. Renfrow*, 172 Colo. 399, 473 P.2d 957 (1970); *People v. Baird*, 172 Colo. 112, 470 P.2d 20 (1970).

The ruling is affirmed.