## No. 26142

## The People of the State of Colorado v. Theodore A. Trusty
(516 P.2d 423)

Decided December 3, 1973.

A. L. Herrmann, Jr., District Attorney, Michael A. Curran, Chief Deputy, Henry Nieto, Deputy, for plaintiff-appellant.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, William V. Hodges, III, Deputy, for defendant-appellee.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

This is an interlocutory appeal by the district attorney, seeking to reverse an order of the Jefferson County district court suppressing evidence seized during an inventory search of an automobile. We reverse.

The record reveals that Officer Shilaos of the Lakewood Department of Public Safety noticed Clarence Good standing next to a Pontiac in the parking lot of the Rally Lounge. Good was apparently pulling up his trousers and appeared to be intoxicated. Officer Shilaos, upon observing this condition, placed Good under arrest for public intoxication. He then looked inside the Pontiac and observed the defendant, Theodore A. Trusty, lying motionless across the front seat. The doors to the Pontiac were locked. Shilaos then radioed for assistance and later, with the help of another officer, attempted to arouse Trusty. After several minutes of banging on the car windows, shouting and whistling, Trusty arose from the seat of the car, unlocked the car door and emerged from the automobile. He also was noticeably intoxicated.

Officer Holman inquired of Trusty about several suitcases in the back seat of the Pontiac. Trusty handed the car keys to Holman and invited him to look in the car, stating, "All you will find will be clothes."

Trusty was then arrested for public intoxication. As he was being placed in the patrol car, he asked if he "could get the car back to the guy." Officer Shilaos asked if the car was his, and Trusty replied, "No, it belongs to a guy named Carpenter." Asked where Carpenter was, Trusty replied, "I

don't know."

At that point Officer Shilaos determined to impound the car and to secure it for the owner. Pursuant to police departmental policy and regulations, he and other officers then conducted an inventory search of the Pontiac. They unlocked the truck to locate the spare tire and jack and discovered Carpenter's dead body. Trusty, Good and one Eaglefeather were thereafter charged with murder.

## I.

At a pretrial hearing Trusty moved to suppress all evidence seized from the automobile. The district attorney challenged his standing to bring the motion. The trial court ruled that, since Trusty had shown he had possession of the vehicle, the burden rested upon the People to show that Trusty's possession was unlawful. Upon the People's failure to produce evidence of unlawful possession, the court granted Trusty's motion to suppress.

■ We hold that this ruling was in error. *People v. Towers,* 176 Colo. 295, 490 P.2d 302; *see also, People v. Godinas,* 176 Colo. 391, 490 P.2d 945. By the overwhelming weight of authority, one not legitimately on premises has no standing to move to suppress the fruits of a search and seizure of those premises. *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Woodring v. United States,* 367 F.2d 968 (10th Cir. 1966); *Kaufman v. United States,* 323 F. Supp. 623 (E.D. Mo. 1971) (dictum); *Meade v. Cox,* 310 F. Supp. 233 (W.D. Va. 1970), *aff'd on other grounds,* 438 F.2d 323; *Hodges v. State,* 48 Ala. App. 217, 263 So. 2d 518; *State v. Pokini,* 45 Haw. 295, 367 P.2d 499; *Palmer v. State,* 14 Md. App. 159, 286 A.2d 572; *Slyter v. State,* 246 Miss. 402, 149 So. 2d 489; *State v. Edmonds,* 462 S.W.2d 782 (Mo.); *Harper v. State,* 84 Nev. 233, 440 P.2d 893. *See generally,* 29 Am. Jur. 2d *Evidence* § § 418 and 421; 48 A.L.R. 3d 559. We point out that this is not a case where possession of the vehicle is the basis for the prosecution of the defendant. Hence, the automatic standing aspect of *Jones v. United States, supra,* does not come into play. *See also, Simpson v. United States,* 346 F.2d 291 (10th

Cir. 1965). Trusty, and not the People, clearly had the burden of showing his legitimate presence in the automobile. The court erred in placing the burden on the People, and ordinarily we would remand for a further hearing wherein Trusty might demonstrate his standing to file the motion to suppress. In view of our resolution that the inventory search was lawful, however, no useful purpose would be served by a further hearing concerning the standing issue.

II.

The trial court further found and concluded that the inventory search of the Pontiac was unlawful inasmuch as no search warrant had been obtained; that there were no exigent circumstances present requiring the immediate search; that the search was not incident to an arrest; that the search was not for contraband or the fruits of a crime; and that even assuming the officers may have been empowered to impound the automobile and thus make an inventory search, the particular circumstances of this case did not warrant an inventory of the items not in plain view — those items in the locked trunk. We disagree.

Initially, we note that the officers in impounding the Pontiac were acting pursuant to specific regulations of the Lakewood Department of Public Safety. The record reveals that one of the regulations concerning impounding of vehicles in arrest situations provides that the arresting officer shall cause a vehicle to be impounded when it is parked in an area where there exists the likelihood that it will be tampered with. Another regulation requires the completion of an impounded-vehicle report, which requires the impounding officer to make a detailed inventory search of the vehicle, listing the presence or absence of various components or fixtures of the vehicle, including the jack and spare wheel in the vehicle trunk. The record shows that the Pontiac was parked in a high-risk area, the parking lot of a tavern; it had out-of-state license plates; the whereabouts of its owner were unknown; and Trusty, who was intoxicated and subsequently placed under arrest, had voluntarily turned over the keys to the auto to the officer and invited a search of the vehicle. We

cannot say that the officers' impoundment and inventory search of the Pontiac under these circumstances, in view of the apparent authority conferred upon them by the police regulations, was an unreasonable search as prohibited by the federal and state constitutions.

We are fortified in this view by the following authorities which hold that inventory searches without a warrant are a constitutional means of protecting property; and when conducted in accordance with legitimate policy, and without the intention of avoiding search warrant requirements, do not infringe upon constitutional rights against unlawful searches and seizures: *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 906; *United States v. Kelehar,* 470 F.2d 176 (5th Cir. 1972); *United States v. Mitchell,* 458 F.2d 960 (9th Cir. 1972); *United States v. Pennington,* 441 F.2d 249 (5th Cir.), *cert. denied,* 404 U.S. 854, 92 S.Ct. 97, 30 L.Ed.2d 94 (1971); *United States v. Fuller,* 277 F. Supp. 97 (D.D.C. 1967); *Urquhart v. State,* 261 So. 2d 535 (Fla. App. 1971); *People v. Sullivan,* 29 N.Y.2d 69, 323 N.Y.S.2d 945, 272 N.E.2d 464; *Heffley v. State,* 83 Nev. 100, 423 P.2d 666; *State v. Criscola,* 21 Utah 2d 272, 444 P.2d 517; *Cabbler v. Commonwealth,* 212 Va. 520, 184 S.E.2d 781; *State v. Montague,* 73 Wash. 2d 381, 438 P.2d 571.

In *Cady v. Dombrowski, supra,* the United States Supreme Court held where a car was in police custody and standard police procedure dictated searching it — in that case, for a police service revolver which might fall into wrong hands — an intrusion into the trunk of the car was not unreasonable within the meaning of the Fourth and Fourteenth Amendments solely for lack of a search warrant. The Court stated: "In *Harris* the justification for the initial intrusion into the vehicle was to safeguard the owner's property, and in *Cooper* it was to guarantee the safety of the custodians. Here the justification, while different, was as immediate and constitutionally reasonable as those in *Harris* and *Cooper*: concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the

vehicle. The record contains uncontradicted testimony to support the findings of the state courts and District Court. Furthermore, although there is no record basis for discrediting such testimony, it was corroborated by the circumstantial fact that at the time the search was conducted Officer Weiss was ignorant of the fact that a murder, or any other crime, had been committed. While perhaps in a metropolitan area the responsibility to the general public might have been discharged by the posting of a police guard during the night, what might be normal police procedure in such an area may be neither normal nor possible in Kewaskum, Wisconsin. The fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not by itself, render the search unreasonable. Cf. *Chambers v. Maroney, supra.*

"The Court's previous recognition of the distinction between motor vehicles and dwelling places leads us to conclude that *the type of caretaking 'search' conducted here of a vehicle* that was neither in the custody nor on the premises of its owner, and that had been placed where it was by virtue of lawful police action, was not unreasonable solely because a warrant had not been obtained. * * *"[1] (Emphasis added.)

As we view *Cady v. Dombrowski, supra,* the Court placed its stamp of approval on inventory searches of automobiles where the "ultimate standard of reasonableness" required by the Fourth Amendment is met. We conclude that the procedures followed in the instant case meet the test of reasonableness. The officers were justified in complying with the prescribed impoundment and inventory search procedures to protect the absent owner from loss, theft or vandalism to his automobile, while at the same time protecting the police from false claims by the absent owner. We find this to be reasonable under the circumstances of this case. Furthermore, there is no suggestion of any taint to this

---

[1] *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067; *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730.

procedure that would arise from the inventory search, were it used merely as a pretext to uncover evidence of criminal conduct, such as the possession of the fruits of a crime, or possession of contraband, and the like. Here, the record supports the conclusion that the inventory search conducted was simply a "caretaking" search, a type approved in *Cady v. Dombrowski, supra,* and nothing more.

We find the trial court's reliance on *Mozzetti v. Superior Court,* 4 Cal. 3d 699, 94 Cal. Rptr. 412, 484 P.2d 84, misplaced. The facts of that case are dissimilar to this case in that *Mozzetti* involved items of evidence contained within a satchel located in the back seat of an automobile, not within "plain view." Here, the dead body was within plain view in the open trunk. *See State v. Guinn,* 301 A.2d 291 (Del. 1973), where *Mozzetti, supra,* was reconciled with other cases involving inventory searches of car trunks held to be proper. For other cases involving approval of inventory searches of automobile trunks, see *United States v. Gerlach,* 350 F. Supp. 180 (E.D. Mich. 1972); *Plitko v. State,* 11 Md. App. 35, 272 A.2d 669; *Mackall v. State,* 7 Md. App. 246, 255 A.2d 98; *State v. Wallen,* 185 Neb. 44, 173 N.W.2d 372; *People v. Kern,* 67 Misc. 2d 495, 324 N.Y.S.2d 442.

The ruling granting Trusty's motion to suppress evidence is reversed.

MR. JUSTICE GROVES and MR. JUSTICE ERICKSON dissent.

MR. JUSTICE GROVES dissenting:

I would remand this matter for further hearing in which Trusty would have opportunity to demonstrate his standing to file the motion to suppress. I dissent from the holding that evidence is admissible after being seized without warrant by the police when the only reason for the search is to make an inventory of the contents of an automobile then impounded by the police.

MR. JUSTICE ERICKSON joins in this dissent.

MR. JUSTICE ERICKSON dissenting:

I join Mr. Justice Groves in his dissent. In addition, I am of the opinion that the trial judge correctly ruled that the defendant had standing to file a motion to suppress. In my view, *Simpson v. United States,* 346 F.2d 291 (10th Cir. 1965), does not support the majority opinion. In *Simpson,* the court held that in order to establish standing to challenge a police search as violative of the Fourth Amendment, the defendant only had to allege that he had a "possessory or proprietary interest" in the thing searched. *See Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Mancusi v. DeForte,* 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). The defendant's presence inside a locked automobile with the ignition keys in his possession is a fact sufficient to constitute a "possessory interest." By establishing that he had a possessory interest in the car, the defendant established his standing to challenge the legality of the search. *Brown v. United States, supra; Simpson v. United States, supra.*

In my view, the majority's reasoning concerning the post-arrest automobile inventory search is also erroneous.[1] In determining the validity of the inventory search, we must first determine whether the police lawfully impounded the car. The People argue that the impoundment in this case is routine procedure required by police department regulations and, therefore, met constitutional standards. *See Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), and *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

Assuming that the police regulation in issue is constitutional, I do not agree that an inventory search is allowable under the facts in this case in the absence of a search warrant. Relying primarily upon *Cady v. Dombrowski, supra,* as a statement of controlling constitutional law, the majority has

---

[1] The defendant was arrested outside of the automobile and, therefore, the search of the car's trunk may not be justified under the doctrine of "search incident to arrest." *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

concluded that the police, pursuant to an internal police department regulation, may conduct an inventory search of an impounded vehicle under virtually any circumstances without first obtaining a search warrant. *Cady v. Dombrowski, supra,* does not support such a broad holding. The "reasonableness" of the intrusion which was justified in *Cady* was premised upon "concern for the safety of the general public who might be endangered if an intruder removed the revolver from the trunk of the vehicle." There are no such pressing concerns in this case. *Cooper v. United States, supra. Cf. McDonald v. United States,* 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed.2d 153 (1948); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). There were no facts known to the police officers at the time they conducted their search, such as existed in *Cady,* which would have made an otherwise unreasonable search constitutionally valid.