## No. 27822

## The People of the State of Colorado v. James Kevin Towery

(573 P.2d 104)

Decided January 16, 1978

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General; J. E. Losavio, Jr., District Attorney, Warren T. Marshall, Deputy, for plaintiff-appellant.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, James Dostal, Deputy, for defendant-appellee.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The appellee is charged with felony theft, in violation of section 18-4-401, C.R.S. 1973 (1976 Supp.). The People bring this interlocutory appeal from the trial court's order suppressing certain evidence and statements. We reverse.

On September 17, 1976, two Pueblo police officers, in plain clothes, went to the appellee's apartment to execute warrants from another county for the arrest of the appellee and one Gary Maloney.[1] When the officers arrived at the residence, only the front screen door was closed. They knocked on the door, but did not identify themselves as policemen. Without coming to the door, the appellee's sister, Kathryn Towery, invited the officers to come in. She later testified that she thought the officers were prospective tenants, since a "For Rent" sign was displayed in the apartment window. When the officers entered, Kathryn Towery and Gary Maloney were seated in the living room. The officers immediately identified themselves, arrested Maloney, and asked whether the appellee was at home.

Ms. Towery told the officers that the appellee was not there, then rose and walked toward a bedroom and closed or attempted to close the bedroom door. One of the officers, who testified that he was uncertain what Ms. Towery was doing, followed her and opened the door. In the bedroom were several kitchen cabinet units partially covered with cardboard. The officers had prior information that some kitchen cabinets had recently been stolen from a construction project in the vicinity, and therefore seized the cabinets.

About one-half hour later, the appellee returned home and was arrested. The officers orally advised him of his constitutional rights, and he indicated that he understood those rights. He then made certain statements.

After the appellee was taken to the police station, he was fully advised of his rights from a written advisement form. He initialled the advisement form and questions as they were read to him, and then made additional statements.

---

[1] The appellee in his brief here and in the trial court refused to admit the existence of the arrest warrants. However, the officers' testimony on the point, was uncontradicted, and the trial court specifically found that the officers possessed the warrants. We will not presume in the absence of any evidence, that error had occurred, and thus we accept the trial court's finding. *See Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

## I.

The People contend that the police officers were legitimately on the premises, and legally seized contraband which was in plain view. We agree.

The appellee seeks to characterize the officers' actions as a "forced entry," and thus bring into consideration the principles governing such entries, as announced in *People v. Lujan*, 174 Colo. 554, 484 P.2d 1238 (1971). It is quite clear, however, that this case is controlled by *People v. Campbell*, 185 Colo. 312, 524 P.2d 73 (1974), and *People v. Malone*, 175 Colo. 31, 485 P.2d 499 (1971). In those cases, we recognized that the principles of *Lujan* do not apply unless the police conduct complained of actually amounts to a "forced entry." Our statement in *People v. Campbell, supra*, is applicable here:

"[T]he police officer merely stepped across the threshold in a nonviolent and nonforceful manner before announcing his identity and purpose. This procedure does no violence to the Fourth Amendment when such officer is clothed with the authority of a valid search warrant." 185 Colo. 312, 315, 524 P.2d 73, 75.

Although the officers in the instant case possessed an arrest warrant rather than a search warrant, we see no practical reason to justify applying a different rule based on that distinction. In our view no substantial constitutional purpose would be served by holding that the officers were required to announce their identity and purpose through the screen door, rather than after peacefully opening the door and entering in response to an invitation from within.

Once legitimately on the premises, of course, the officers were entitled to seize stolen property plainly visible to them, even though they had originally come for another purpose. *People v. Renfrow*, 172 Colo. 399, 473 P.2d 957 (1970). Here, the officer actually discovered the cabinets inadvertently. He testified that when Ms. Towery walked down the hallway and began to close the bedroom door, he did not know what she was doing but suspected that the appellee might be hiding in the bedroom. Even absent Ms. Towery's suspicious conduct, the officer had a right, and a duty, to search the house for the appellee, since he held a valid arrest warrant.

In summary, since discovery of the stolen cabinets was not the product of an illegal entry or search, the cabinets were admissible as evidence.

## II.

The trial court specifically found that the appellee had been orally advised of his constitutional rights at his residence, and that he was again advised of them in writing at the police station. The court further found that the appellee knowingly and voluntarily gave the statements. Nonetheless, the court suppressed the statements on the basis of its holding that the officers had entered the appellee's home illegally.

Since we have held that the officers' initial entry was lawful, the subsequent arrest of the appellee, pursuant to a warrant, was also lawful. Thus, the appellee's statements should not have been suppressed.

Accordingly, the trial court's order suppressing both the appellee's statements and the evidence seized at his home, is reversed, and the cause is remanded for further proceedings consonant with the views expressed in this opinion.