The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Gilbert Edward GIFFORD,
Defendant–Appellee.

No. 89SA126.

Supreme Court of Colorado,
En Banc.

Dec. 4, 1989.

G.F. Sandstrom, Dist. Atty. and Patrick J. Delaney, Deputy Dist. Atty., Pueblo, for plaintiff-appellant.

Darol C. Biddle, Pueblo, for defendant-appellee.

Justice ERICKSON delivered the Opinion of the Court.

Pursuant to C.A.R. 4.1 the prosecution appeals from a district court order suppressing all evidence seized during a search of the defendant's residence as well as statements made by the defendant during the course of the search. In our view, the

trial court properly held that the police officers made an illegal forced entry. As this issue is dispositive, we decline to address the remaining issues presented by · this appeal. Accordingly, we affirm the order of the district court.

## I.

At the suppression hearing, the prosecution presented the testimony of Detectives Andrew and Samek of the Pueblo Police Department and Jay Willden. Andrew and Samek questioned Willden, who was being held on charges unrelated to this proceeding. Willden confessed to the commission of several burglaries and said that he sold the stolen items to the defendant at his residence for cash. Willden also said that he had friends that had been selling stolen property to the defendant for several months on a regular basis. He stated that the defendant told him that he would buy "most any electronic stolen property and especially handguns" for cash. The officers verified the details of Willden's story by reviewing police reports made during the investigations of the burglaries Willden admittedly committed.

After Willden was released on bond, Detectives Samek and Andrew arranged for him to sell three video cassette recorders (VCRs) to the defendant at his home. Andrew obtained the three VCRs from a business previously burglarized by Willden. With Samek monitoring the transaction through an electronic listening device, Willden sold two of the VCRs to the defendant for $270 and exchanged the third for one that Willden had sold to the defendant that did not work. During the course of the sale, Willden told the defendant that the VCRs were stolen.

After the transaction was completed, Samek reported the facts relating to the sale to Detective Andrew. Andrew prepared an affidavit supporting the application for a search warrant using the information provided by Willden, the corroborating police reports, and Samek's report of the sale of the three VCRs. After obtaining the search warrant for the defendant's residence at 2211 Moline, Andrew notified Sa-

mek, who was waiting near the defendant's residence, of its issuance. The search warrant authorized seizure of a number of specifically described pieces of electronic equipment, and:

> All electronic equipment (video cassette recorder's [sic], televisions, microwaves, stereo components) and hand guns with serial numbers removed, altered or destroyed and articles of personal property tending to establish the identity of persons in control of said contraband, related paraphenalia [sic], consisting in part and including, but not limited to, utility company receipts, rent receipts, financial records, cancelled mail envelopes, photographs, keys, and monies related to the foregoing illegal activities.

Samek, accompanied by two officers with other officers waiting around the house, approached the front door of the defendant's residence. Three people, unidentified in the record, were on or near the front porch. Samek identified himself and the other police officers, and stated that a search warrant had been issued authorizing a search of the house. He then entered the house through a closed, unlocked door, followed by seven other officers. The police officers admittedly did not have possession of a warrant when the entry was made. Samek encountered the defendant's wife in a room adjoining the front door, and informed her that he was a police officer and that a warrant had been issued to search the house. After entry was made, each of the police officers searched a different part of the house. The defendant, who was not present when the officers entered, was brought to the house by another police officer shortly after the search commenced. Approximately thirty minutes later, Andrew arrived with the search warrant.

As many as fifteen police officers participated in an extensive search of the defendant's house at 2211 Moline and a garage owned by the defendant at a separate address, 2210 Newport. The search lasted approximately eight hours and numerous items were seized that were not described in the warrant. Five items specifically de-

scribed in the warrant were seized, including the three VCRs which Willden sold to the defendant. Five items lacking legible serial numbers and an address list, utility bills, and other assorted bills, receipts and deposits were also seized. Other items not described in the warrant were seized, including electronic equipment with legible serial numbers, clothing in various sizes with price tags attached, and jewelry. Based on the items acquired pursuant to the warrant, the defendant was charged with five counts of theft by receiving, section 18-4-410, 8B C.R.S. (1986).

## II.

The defendant filed a motion to suppress evidence alleging, *inter alia*, that: (1) the search warrant issued for 2211 Moline was not supported by probable cause; (2) the description of the items to be seized was insufficient; (3) the police officers failed to knock and announce their purpose and authority prior to entering; and (4) the property was illegally seized pursuant to a general exploratory search. The defendant also moved to suppress the items taken from the garage at 2210 Newport.

The trial court granted the defendant's motion to suppress, holding that the officers made a forceful and illegal entry into the defendant's home without justification. As an alternative ground, the trial court found that the search mandate to seize personal property tending to establish the identity of persons in control of the stolen property was not based on probable cause. The court also concluded that the seizure of

items not described in the warrant did not satisfy the plain view exception to the search warrant requirement. The defendant's statements to the police during the search were also suppressed as fruit of the poisonous tree. The prosecution appealed.[1]

## III.

■ The trial court suppressed all evidence seized during the search of the defendant's residence and all statements made by the defendant during the search on the ground that the method of executing the warrant invalidated the entire search. The first issue is whether the officers complied with the "knock and announce" requirement. The trial judge held that the officers forcibly entered the defendant's house through an unlocked, closed door without notice to or permission of the occupants and immediately thereafter conducted a search of the defendant's residence prior to the arrival of a search warrant. In reaching this conclusion, the court found that the knock and announce requirement was not satisfied by Samek's statement to the unidentified persons outside of the house.[2]

■ A basic axiom of search and seizure law is that a lawful search must be preceded by a lawful entry of the premises to be searched. *See Gouled v. United States*, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921). In *People v. Lujan*, 174 Colo. 554, 484 P.2d 1238 (1971), we held, on the basis of the fourth amendment and the common law, that police officers executing a warrant must identify themselves and their

---

1. The trial court order suppressed the evidence seized from the garage at 2210 Newport because the warrant was not issued for that address. Additionally, a handgun was suppressed on the grounds that there was not probable cause to believe that it was still at the defendant's residence since Willden claimed to have sold the gun to the defendant approximately three months prior to the issuance of the warrant. The prosecution does not appeal these parts of the trial court's suppression order.

2. The trial court did not address the issue of whether the officers were required to present a copy of the warrant to the occupants of the premises upon entry and prior to the commencement of the search. We agree that

presentment of the warrant prior to the commencement of the search is not an absolute constitutional requirement. *United States v. Hepperle*, 810 F.2d 836, 839 (8th Cir.), *cert. denied*, 483 U.S. 1025, 107 S.Ct. 3274, 97 L.Ed.2d 772 (1987). However, we also agree with the Eighth Circuit that failure to present the warrant when the search is commenced creates "a greater potential for confrontation and violence," and should be discouraged. *Hepperle*, 810 F.2d at 839. Possession of the search warrant by the searching officers at the commencement of the search is a relevant consideration in determining the reasonableness of the search. 2 W. LaFave, *Search and Seizure* § 4.12, at 359 (2d ed. 1987).

purpose prior to a forced entry, unless certain exceptions apply.[3] *Id.* at 559, 484 P.2d at 1241. The prosecution does not contend that any of the exceptions set forth in *Lujan* apply to this case. The search warrant was not a "no knock" warrant and no justification was shown for entry without complying with the knock and announce requirement of *Lujan.*

Since the trial court found that there was a forced entry and that the requirements of *People v. Lujan* were not met, the burden was on the prosecution to establish that the search was lawful. *People v. Madson,* 638 P.2d 18, 33 (Colo.1981). In *People v. Griffin,* 727 P.2d 55 (Colo.1986), an illegal search was made and then the premises were secured until the search warrant arrived. We held that the search pursuant to the warrant was not tainted by the unlawful warrantless search made at the time of entry and suppressed only those items which were seized prior to the time the search warrant was brought to the premises. *Id.* at 58. Since the search warrant in *Griffin* was based on information obtained by the officers prior to the warrantless entry, the prosecution established that the search pursuant to the warrant was sufficiently attenuated from the prior unlawful entry that the fruits of the search were admissible under the independent source doctrine. *Id.* The prosecution in this case did not establish that the search of the defendant's residence was free of the taint of the illegal entry.

A forced entry need not be accomplished by actual physical violence, since an unannounced entry through an unlocked door may be forcible. *Sabbath v. United States,* 391 U.S. 585, 590, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828 (1968);[4] *People v. Godinas,* 176 Colo. 391, 394–95, 490 P.2d 945, 947 (1971). Such an entry is as violative of the purposes underlying the knock and announce requirement as an entry involving actual physical harm to property. The knock and announce requirement insulates persons from the shock of unannounced entry of police officers into their homes, and protects both occupants and searching police officers from the consequences of the use of force in defense of the home against unauthorized entry. 2 W. Lafave, *Search and Seizure* § 4.8, at 272–73 (2d ed.1987). Since Samek and the other officers entered the defendant's house through a closed door, we agree with the trial court's finding that the searching officers' entry into the defendant's residence was forced so as to require notice prior to entry. *People v. Lujan,* 174 Colo. at 559, 484 P.2d at 1241.[5]

We also agree with the trial court's conclusion that Samek's conduct did not satisfy the notice requirement. An officer executing a search warrant must iden-

---

**3.** The exceptions to the "knock and announce" requirement are:

(1) the warrant expressly authorizes forced entry without such a prior announcement, or (2) the circumstances known to such officer or person at the time of forced entry, but, in the case of the execution of a warrant, unknown to the applicant when applying for such warrant, give him probable cause to believe that—(a) such notice is likely to result in the evidence subject to seizure being easily or quickly destroyed or disposed of, which is true in every case involving a search for narcotics, (b) such notice is likely to endanger the life or safety of the officer or other person, (c) such notice is likely to enable the party to be arrested to escape, or (d) such notice would be a useless gesture.

*People v. Lujan,* 174 Colo. at 559, 484 P.2d at 1241.

**4.** *Sabbath* interpreted 18 U.S.C. § 3109, the federal knock and announce (or "identify") statute,

to apply to an unannounced entry through an unlocked door as well as actual physical "breaking." 391 U.S. at 590, 88 S.Ct. at 1758. Although this case does not involve the federal statute, we find the reasoning of *Sabbath* applicable to analysis of the knock and announce rule under the fourth amendment. *See United States v. Valenzuela,* 596 F.2d 824 (9th Cir.), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979) (knock and announce requirement of 18 U.S.C. § 3109 incorporated into fourth amendment).

**5.** This result is not contrary to our holdings in *People v. Towery,* 194 Colo. 486, 573 P.2d 104 (1978); *People v. Campbell,* 185 P.2d 312, 524 P.2d 73 (1974); and *People v. Malone,* 175 Colo. 31, 485 P.2d 499 (1971). *Cf. People v. Godinas,* 176 Colo. at 394–95, 490 P.2d at 947. The determination of whether an entry pursuant to a warrant is forcible is fact specific, and the holdings in *Towery, Campbell,* and *Malone* are limited to the specific facts set forth in those cases.

tify himself and his purpose to the person or persons in control or apparent control of the premises to be searched. *See* Model Code of Pre–Arraignment Procedure, § SS 220.3(2) (1975). Here, Samek identified himself and two other officers to three unidentified persons who were on or near the front porch, and advised them that a search warrant had been issued for the house. The prosecution presented no evidence that the three had control of or any contact or interest in the premises, and no evidence supports a reasonable belief by the police officers that the three persons were occupants, residents, or owners in control of the home. There is simply no basis to support a finding that the officers complied with the knock and announce requirement.

█ The appropriate remedy for an invalid entry pursuant to a warrant is suppression of the evidence seized during the search. *United States v. Baker*, 638 F.2d 198, 202 (10th Cir.1980). *See also Sabbath v. United States*, 391 U.S. at 586, 88 S.Ct. at 1756; *Miller v. United States*, 357 U.S. 301, 313–14, 78 S.Ct. 1190, 1197–98, 2 L.Ed.2d 1332 (1958).[6]

**6.** This holding does not conflict with *People v. Griffin*, 727 P.2d 55 (Colo.1986), where we addressed the issue of whether police officers may lawfully secure premises to be searched prior to the issuance of a search warrant. Relying on *People v. Hannah*, 183 Colo. 9, 514 P.2d 320 (1973), we held in *Griffin* that evidence obtained pursuant to a valid search warrant is admissible despite a previous unlawful entry and seizure by the police, so long as the search following the unlawful entry is not tainted by the prior illegality. In *Griffin*, we emphasized the lawful search which led to the discovery of narcotics when we stated:

The trial judge found that there was probable cause to search the residence for contraband. However, the trial judge found, and the prosecution concedes, that there were no exigent circumstances to justify the warrantless entry by the sheriff's deputies. The trial court's determination that the initial entry was unlawful was correct, and the prosecution has conceded that the two bongs seized as evidence in plain view must be suppressed. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *People v. Hannah*, 183 Colo. 9, 514 P.2d 320 (1973).

The central issue is whether the trial court properly suppressed the narcotics obtained as *a result of the execution of the search warrant.*

## IV.

We affirm the trial court's order suppressing the fruits of the search on the grounds that the officers failed to comply with the knock and announce requirement. Since the failure to comply with the requirements of *Lujan* vitiates the search, the remaining issues raised by the prosecution are moot.

ROVIRA, J., dissents and MULLARKEY, J., joins in the dissent.

VOLLACK, J., dissents and MULLARKEY, J., joins in the dissent.

Justice ROVIRA dissenting:

I believe that there was no forced entry and, therefore, the announce and identify requirement of *People v. Lujan*, 174 Colo. 554, 484 P.2d 1238 (1971), was not violated. However, even if the entry were unlawful, I do not agree with the majority's conclusion that the appropriate remedy is suppression of the evidence seized during the search pursuant to a valid search warrant.

The marijuana, hashish, and psilocybin mushrooms were not discovered until the valid search warrant was executed.

727 P.2d at 58 (emphasis added). Since the search warrant in *Griffin* was based on information obtained by the police officers before the warrantless entry, we held that the evidence seized pursuant to the warrant was improperly suppressed. However, we affirmed the suppression of all items seized as a result of the initial unlawful entry. *People v. Griffin*, 727 P.2d at 58.

This case does not present the factual circumstances in *Griffin* since Detective Samek and the other officers commenced an immediate search of the defendant's home and did not seek to secure the premises. The *Griffin* issue was not raised by the prosecution in the trial court and has not been argued or asserted by the prosecution or the defendant on appeal. The factual differences distinguish this case from *Griffin*. The *Griffin* issue is addressed only in the dissent, and has not been cited, addressed, or considered by the parties or the trial court. If a *Griffin* issue is raised by the prosecution it may be addressed by the trial court if there is evidence to support the determination of that issue. The illegal entry and the manner in which the warrant was executed has caused the court to reach a different result in this case than in *Griffin*.

Three years ago in *People v. Griffin,* 727 P.2d 55 (Colo.1986), we held that even though the initial entrance into the defendant's home was unlawful, nevertheless, evidence obtained pursuant to a valid search warrant was admissible "so long as the valid search is not tainted by the prior illegality." *Id.* at 58.

In arriving at this conclusion, we considered and found support for our decision in *People v. McFall,* 672 P.2d 534 (Colo. 1983); *People v. Turner,* 660 P.2d 1284 (Colo.1983); *People v. Barndt,* 199 Colo. 51, 604 P.2d 1173 (1980); and *People v. Hannah,* 183 Colo. 9, 514 P.2d 320 (1973).

In each of these cases there was either an initial illegal search followed by a search pursuant to a warrant, *Turner;* breaking in and securing the premises until a search warrant arrived, *Hannah* and *Barndt;* or illegal entry followed by a warrantless arrest which in turn was followed by a search pursuant to a warrant, *McFall.*

Here, the evidence is undisputed that the search was based not only on information obtained before entry into the defendant's home, but did not begin until after the search warrant had issued. Majority op. at 796.

In *Griffin,* we also rejected the "de facto seizure" rule adopted by the California Supreme Court in *People v. Shuey,* 13 Cal.3d 835, 533 P.2d 211, 120 Cal.Rptr. 83 (1975). The court there held that once there had been an illegal occupation of the defendant's home, the subsequent obtaining of a warrant could no more operate to disinfect the illegal police conduct than if the police had actually seized the property sought to be suppressed prior to the acquisition of the warrant.

The majority suggests that its holding does not conflict with *Griffin* because here the "officers commenced an immediate search of the defendant's home, and did not seek to secure the premises." Majority op. at 799 n. 6.

While it is true that here the search began immediately after the police entered the defendant's home, such search was permissible because the warrant had already issued. In short, there was no need to secure the premises.

The majority also notes that the *Griffin* issue has not been considered by the parties or the trial court, and if raised by the prosecution may be considered by the trial court. Majority op. at 799 n. 6. While I believe that this case should be decided contrary to the result reached by the majority, I endorse this suggestion.

The remedy of suppression is a drastic one and not warranted here. In my view, we should reaffirm the position we took in *People v. McFall,* 672 P.2d 534, 539 (Colo. 1983), that where the search warrant was not tainted by illegal police conduct, the evidence seized pursuant to the warrant should not be suppressed.

I respectfully dissent.

I am authorized to say that Justice MULLARKEY joins me in this dissent.

Justice VOLLACK dissenting:

I respectfully dissent from the majority's holding that the officers violated the "knock and announce" requirement articulated by this court in *People v. Lujan,* 174 Colo. 554, 559, 484 P.2d 1238, 1241 (1971). In this case the knock and announce requirement did not apply because the officers did not make a forced entry. Even if the officers' conduct amounted to a forced entry of the defendant's residence, the officers satisfied the knock and announce requirement by announcing their identity and purpose to those on the porch of the house and to the defendant's wife upon entering through the unlocked front door.

### I.

I disagree with the majority's conclusion that *Lujan*'s *forced* entry "announce and identify" rule applies in this case. In *Lujan,* we held that, with some exceptions which are not applicable in this case,[1]

---

1. As the majority notes, the prosecution does not contend that any of the exceptions identified

in *Lujan* are applicable. Maj. op. at 797–798.

"when police officers attempt a *forced* entry, they must first identify themselves and make their purpose known." *Id.* Our previous decisions demonstrate that the officers in this case did not make a forced entry into the defendant's residence.

In *People v. Malone,* 175 Colo. 31, 33, 485 P.2d 499, 500 (1971), we held that a police officer did not violate the fourth amendment when he entered an outer door, knocked for the first time on an inner door, and identified himself as a police officer after one of the defendants voluntarily admitted him to the premises. In *People v. Towery,* 194 Colo. 486, 488, 573 P.2d 104, 105 (1978), we held that officers did not engage in a forced entry when they knocked on the front screen door without identifying themselves and entered the defendant's house at the invitation of the defendant's sister. In *People v. Campbell,* 185 Colo. 312, 314, 524 P.2d 73, 74 (1974), the officer executing a valid search warrant rang the doorbell to the defendants' residence and stepped inside. After entry into the residence the officer announced his presence and purpose to one of the defendants. *Id.* We noted that the officer "merely stepped across the threshold in a nonviolent and nonforceful manner before announcing his identity and his purpose," and held that such actions do "no violence to the fourth amendment when such an officer is clothed with the authority of a valid search warrant."[2] *Id.* at 315, 524 P.2d at 75.

In this case Detectives Andrew and Samek arranged for informant Willden to sell video cassette recorders to the defendant at his home. Willden was equipped with an electronic listening device monitored by Detective Samek. Willden represented to the defendant that the items were stolen. After the sale was completed, Detective Andrew prepared affidavits for a search warrant and left Detective Samek near the residence while he obtained the search warrant. When the search warrant issued Detective Andrew notified Detective Samek, who was waiting near the defendant's resi-

dence. Detective Samek and two other police officers, one of whom was in uniform, approached the front door of the defendant's residence, identified themselves as police officers to three unidentified people on the front porch, and told them that a search warrant had been issued authorizing a search of the house. Detective Samek's uncontradicted testimony was that the front door may have been open but, if not, it was unlocked. Upon entering the front door with the uniformed officer, Detective Samek met the defendant's wife and advised her that he was a police officer, and that a search warrant had been issued and would be delivered soon.

The officers in this case were clothed with the authority of a valid search warrant. Detective Andrew testified that he arrived with the warrant no more than fifteen to twenty minutes after Detective Samek and the other officers began searching the defendant's house. The defendant testified that Detective Andrew did not serve him with a search warrant when he first arrived, but that Detective Andrew served him with the search warrant about twenty-five to thirty minutes after the other officers began the search. The defendant also testified that he did not remember when Detective Andrew arrived because several policemen were already in the house when Detective Andrew arrived. "[L]aw enforcement officials are not constitutionally required to present a copy of the search warrant prior to commencing a search, so long as the previously issued warrant is presented before the officials vacate the premises." *United States v. Hepperle,* 810 F.2d 836, 839 (8th Cir.) ("[w]hile it may be foolhardy to proceed in the absence of the physical presence of the warrant, it is not unconstitutional"), *cert. denied,* 483 U.S. 1025, 107 S.Ct. 3274, 97 L.Ed.2d 772 (1987).

The fact that the officers in this case did not knock on the front door of the defendant's house does not support the conclusion that they made a forced entry. The

**2.** In *Campbell,* 185 Colo. at 315, 524 P.2d at 75, we stated that *People v. Godinas,* 176 Colo. 391, 490 P.2d 945 (1971), relied upon by the majori-

ty, maj. op. at 798, was "inapposite as the officers in that case did not have a valid search warrant."

officers had already identified themselves and their purpose to three people at the porch of the house.[3] Detective Samek testified that he could not remember whether the front door of the house was open or closed, but that if it was closed it was unlocked. Upon entering the house Detective Samek identified himself to the defendant's wife and stated that a search warrant for the house had been issued. I would hold that under the unrebutted facts of this case the knock and announce requirement was inapplicable because the officers did not make a forced entry into the defendant's house.

The majority concludes that a forced entry need not be accomplished by actual physical violence, since an unannounced entry through an unlocked door may be forcible. Maj. op. at 798 (citing *Sabbath v. United States*, 391 U.S. 585, 590, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828 (1968); *People v. Godinas*, 176 Colo. 391, 394–95, 490 P.2d 945, 947 (1971)). I disagree that the reasoning of *Sabbath* is applicable to this case. The Supreme Court decided *Sabbath* solely on the basis of federal statute 18 U.S.C. § 3109, and not on the basis of the fourth amendment.[4] In my opinion, *Ker v. State of California*, 374 U.S. 23, 37, 83 S.Ct. 1623, 1631–32, 10 L.Ed.2d 726 (1963), sets the standard for determining whether arrests by state officers for state offenses are unlawful. The Supreme Court held in *Ker* that the lawfulness of such arrests is to be determined by state law insofar as it is not violative of the federal constitution.[5] *Id.* I cannot conclude that in *Sabbath* the Court intended to make the fourth amendment synonymous with 18 U.S.C. § 3109. Therefore, *Sabbath* does not apply to the

issue of whether the officers made a *forced* entry.

*Lujan* is consistent with *Ker* and establishes the standard to be applied if we conclude the officers made a *forced* entry. In my opinion the majority's conclusion that the officers' entry was unlawful because they failed to knock and announce their purpose is based on a narrow reading of *Lujan*. In *Lujan*, 174 Colo. at 556, 484 P.2d at 1239–40, the police knocked on the door, waited a minute, knocked again, and, when no one answered, used a sledge hammer to break the door down and gain entry. In *Lujan*, we required officers making forced entries to "identify themselves and make their purpose known." *Id.* at 559, 484 P.2d at 1241. I believe the officers' entry in this case conformed to the requirements of *Lujan* and was not an unreasonable search under fourth amendment standards. The officers' action in the present case also served the purposes of the rules of announcement. Federal courts have recognized that the "rule of announcement" protects an individual's right to privacy in the home to the extent possible and, consistent with the execution of the warrant, provides the occupant and the entering officers with protection from violence, and protects against the needless destruction of property. *See United States v. Little*, 753 F.2d 1420, 1435 (9th Cir.1984); *United States v. McConney*, 728 F.2d 1195, 1206 (9th Cir.), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *United States v. Bustamante–Gamez*, 488 F.2d 4, 9 (9th Cir.1973), *cert. denied*, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974).

The holding in *United States v. Salter*, 815 F.2d 1150 (7th Cir.1987), is also instructive in this case. In *Salter*, a police officer

---

**3.** Detective Samek testified that at the front of the house he "first met with three people at the front porch of the address."

**4.** *Sabbath*, 391 U.S. at 589, 88 S.Ct. at 1758, as the majority notes, interpreted 18 U.S.C. § 3109, and held that "the use of 'force' [is not] an indispensable element of the statute." Section 3109 of 18 U.S.C. identifies the conditions under which an officer may "break open" any outer or inner door or window of a house to execute a search warrant. *Id.* *Sabbath* does not control the present case because *Lujan*, 174 Colo. at 559,

484 P.2d at 1241, only imposes an announce and identify requirement where "officers attempt a *forced entry.*" (Emphasis added.)

**5.** *Cf. United States v. Valenzuela*, 596 F.2d 824, 830 (9th Cir.), *cert. denied sub nom. Lizarraga v. United States*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979) ("to some extent, the knock-notice requirements of 18 U.S.C. § 3109 have been incorporated into the fourth amendment" (brackets omitted)).

pretending to be a hotel clerk asked the defendant, a hotel guest, to come to the front desk. When the defendant opened the door to her room, another officer blocked the door with his foot. The defendant was then escorted back into her room and the officers conducted a search pursuant to a warrant. The court held that this behavior was not an intrusion within the meaning of 18 U.S.C. § 3109. *Id.* at 1152.

Given that the federal knock and announce statute is more strict than the knock and announce requirements we set forth in *Lujan*,[6] the officers' action of announcing their entry to those on the porch, entering through an unlocked door, and announcing themselves again to the defendant's wife, violated neither the *Lujan* knock and announce rule nor the fourth amendment.

I am authorized to say that Justice MULLARKEY joins in this dissent.

---

6. *Compare Sabbath,* 391 U.S. at 589, 88 S.Ct. at 1758 (use of force not indispensable to a "breaking" within the meaning of 18 U.S.C. § 3109), *with Lujan,* 174 Colo. at 559, 484 P.2d at 1241 (officers must identify themselves and make their purpose known before attempting a *"forced entry"* (emphasis added)).