The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Allen **MILLER**, Defendant–Appellant.

No. 02CA0850.

Colorado Court of Appeals, Div. II.

March 11, 2004.

Certiorari Granted July 26, 2004.*

* Justice COATS does not participate.

Ken Salazar, Attorney General, Rebecca A. Adams, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Suzan Trinh Almony, Broomfield, Colorado, for Defendant–Appellant.

Opinion by Judge NIETO.

Defendant, Allen Miller, appeals the judgment of conviction entered on jury verdicts finding him guilty of two counts of manufacturing a schedule II controlled substance, two counts of possession with intent to distribute a schedule II controlled substance, two counts of possession of a schedule II controlled substance, and five special offender counts, and the trial court's adjudication of six habitual criminal counts. We affirm.

While investigating defendant for illegal drug activity, a police officer discovered two active arrest warrants for defendant arising out of a misdemeanor case and a traffic case. The officer, in the company of fellow officers, entered defendant's home to arrest him on the two warrants. While there, the officer saw evidence of a methamphetamine laboratory in plain view. The officers secured the premises, and one officer left to obtain a search warrant. Defendant was taken into custody, but was later released on bond.

A month after the arrest, the investigating officer received information that defendant had set up a new methamphetamine laboratory in his home. The officer returned to defendant's home and asked defendant for consent to search. Defendant refused, but defendant's wife, who was a co-occupant of the home, consented to the search. While the officer was obtaining consent from defendant's wife, he noticed drug paraphernalia in plain view on the coffee table. As a result, the officer secured the house, obtained a search warrant, searched the house, and arrested defendant again.

Charges arising out of both incidents were combined for trial, and defendant was found guilty of the above offenses.

### I.

■ Defendant first contends the court erred in denying his motion to suppress evidence discovered during the execution of the two arrest warrants. Defendant argues that the arrest was an impermissible pretext to search his home for suspected drug activity. We disagree.

■ One exception to the search warrant requirement is the discovery of evidence in plain view to an officer who is validly on the premises. Evidence in plain view may form the basis for probable cause to obtain a search warrant. *People v. Clements,* 661 P.2d 267 (Colo.1983).

■ An outstanding arrest warrant provides probable cause to arrest the person named in the warrant. *People v. Thompson,* 793 P.2d 1173 (Colo.1990). Police officers may enter a suspect's home to arrest him or her when they have an arrest warrant and have reason to believe the suspect is within. *People v. Dotson,* 55 P.3d 175 (Colo.App. 2002).

■ Where a defendant is detained for a traffic violation and the police officer develops probable cause to search the vehicle, the officer's ulterior motive for the search does not invalidate it. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "[O]therwise lawful conduct by law enforcement officers is not made illegal or unconstitutional merely because the officers' subjective intent is illegitimate." *People v. Altman,* 938 P.2d 142, 146 (Colo.1997). The validity of the search must be determined by an objective analysis of the circumstances supporting probable cause for the search and not upon the subjective intent of the officer. *People v. Altman, supra; People v. Rodriguez,* 945 P.2d 1351 (Colo.1997).

■ Here, the officer had two warrants for defendant's arrest, and he had reason to believe defendant was in the residence. We can perceive no reason to analyze a plain view search incident to an arrest upon a warrant in a manner more restrictive then a search based upon probable cause developed after a traffic stop. An arrest on a warrant and a temporary detention during a traffic stop are both seizures under the Fourth Amendment. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

Therefore, we hold that the validity of such a search must be determined by an objective analysis of the validity of the arrest warrant and the circumstances of its execution and not by an analysis of the officer's motives for executing the warrant.

Defendant argues that the correct test to determine whether the arrest was pretextual is the "reasonable officer" test articulated in *People v. Hauseman,* 900 P.2d 74 (Colo.

1995). However, *Whren, Altman,* and *Rodriguez* all reject this test in favor of an objective analysis of the circumstances giving rise to probable cause to arrest.

Further, *Hauseman* is distinguishable because it involved an inventory search. The Supreme Court in *Whren* recognized a clear distinction between inventory and administrative searches, which do not require probable cause, and searches based on probable cause.

Defendant does not dispute that the warrants were valid, and, except as discussed below, he does not challenge the manner in which they were executed. Because the officer had valid warrants for defendant's arrest and no basis exists for challenging the manner of execution, the officer's motives have no bearing on the validity of the plain view search incident to defendant's arrest. Therefore, the officer properly used the information gained in the plain view search to obtain a search warrant.

Accordingly, we conclude that, based on this argument, the trial court correctly denied the motion to suppress.

## II.

■ Defendant next contends that the court erred in denying his motion to suppress because the police officer did not identify himself and announce his intentions prior to a forced entry into the residence. We disagree.

■ A lawful search must be preceded by a lawful entry into the premises to be searched. When executing a warrant, police officers must identify themselves and their purpose prior to a forced entry, unless an exception applies. However, the "knock and announce" requirement is applicable only if the police conduct constituted a forced entry. *People v. Gifford,* 782 P.2d 795, 797 (Colo. 1989).

No forced entry occurs when a police officer, in possession of a valid search warrant, rings the doorbell and merely steps across the threshold of a house in a nonviolent and nonforceful manner before identifying himself and his purpose of executing a warrant. *People v. Campbell,* 185 Colo. 312, 524 P.2d 73 (1974). Further, police officers, in possession of a valid arrest warrant, who peacefully

open a door and enter a house in response to an invitation from within, do not effectuate a forced entry. *People v. Towery,* 194 Colo. 486, 573 P.2d 104 (1978).

Here, the trial court found that an officer knocked on the door, defendant's wife answered, and the officers entered. The officer testified that he identified himself as a police officer and asked whether defendant was there. The court found that defendant's wife told the officer that defendant was there and offered to go get him. The court also found that the officer responded, "no, we'll get him ourselves," and then he entered and arrested defendant. These findings do not support a conclusion that the officer forced an entry into the home.

■ We must accept the trial court's factual findings if they are supported by the record, as they are here. *People v. Perea,* 74 P.3d 326 (Colo.App.2002). The trial court did not make a specific finding that the officers did not effectuate a forced entry, but it found that the manner of executing the warrant was proper. Because the factual findings permit no other conclusion, we conclude there was no forced entry and the "knock and announce" requirement was inapplicable.

## III.

■ Defendant next contends the court erred in finding the consent to search given by his wife was voluntary because the court did not consider her particular characteristics when evaluating the circumstances in which the consent was given. We disagree.

■ A warrantless search is constitutionally justified when it is conducted pursuant to voluntary consent. Consent to search is voluntary if it is the product of an essentially free and unconstrained choice and not the result of circumstances that overbear the consenting party's will. The prosecution bears the burden of proving by clear and convincing evidence that a person's consent to search was voluntarily given. Before a court may conclude that consent was voluntarily given, it must find no objective evidence of coercion, duress, deception, promises, threats, intrusive conduct, or other undue influence by the police that

## 1202

critically impaired the person's judgment. If there is objective evidence of coercive police conduct, the court should then consider the person's subjective characteristics and whether the police conduct could reasonably have appeared to be coercive. *People v. Magallanes–Aragon,* 948 P.2d 528 (Colo. 1997).

At the hearing, an officer testified that while obtaining consent from defendant's wife, he did not make any threats or promises to her, demand to be allowed in the house, or draw his gun. A written consent to search form signed by defendant's wife and a handwritten statement signed by her were admitted into evidence. The written statement was signed several months after the search and stated that she had consented to the search without any intimidation by the police.

Defendant's wife testified at the suppression hearing that she gave consent under duress caused by threats from the officer and her forcible removal from the home. Another witness also testified that the wife was forcibly removed from the house.

The trial court considered all this evidence and specifically rejected the evidence of force and threats. It found the testimony of defendant's wife to be incredible. It then found that the consent to search had been freely and voluntarily given.

Because the trial court found no credible objective evidence of coercive police conduct, there was no need to consider the particular characteristics of defendant's wife. *See People v. Johnson,* 865 P.2d 836 (Colo.1994)(in the absence of evidence of coercive police conduct, trial court's finding of voluntary consent should not be disturbed).

Accordingly, we will not disturb the trial court's finding that defendant's wife voluntarily consented to the search of her home. *See People v. Stark,* 691 P.2d 334 (Colo.1984)(appellate court will not substitute its judgment as to the weight of evidence and credibility of witness for that of the trial court).

### IV.

■ Defendant next contends that a co-occupant of his home may not validly consent to a search after he had expressly refused consent to search. We disagree.

■ One of the exceptions to the requirement of a valid search warrant is a search conducted pursuant to consent freely and voluntarily given. A valid consent may be given by a defendant or by another person with common authority over the premises to be searched. Common authority rests on mutual use of the property by persons generally having joint access or control for most purposes. This joint access makes it reasonable to conclude that any of the co-inhabitants has the right to permit an inspection and that the co-inhabitants have assumed the risk that one of them might permit the common area to be searched. "The valid consent of a person with 'common authority' will justify a warrantless search of a residence despite the physical presence of a nonconsenting co-occupant." *People v. Sanders,* 904 P.2d 1311, 1313 (Colo.1995).

Here, defendant does not dispute that his wife had common authority over the premises. Rather, he argues that her consent could not override his express refusal. We disagree.

Although Colorado courts have never ruled on this issue, other jurisdictions have found that a co-occupant's consent was valid despite the defendant's refusal to grant consent. *United States v. Morning,* 64 F.3d 531 (9th Cir.1995)(a consent to search by a co-occupant is valid against a defendant when both are at the scene, and the defendant has refused consent); *Lenz v. Winburn,* 51 F.3d 1540, 1548 (11th Cir.1995)(third party with common authority can consent, "even when a present subject of the search objects"); *United States v. Donlin,* 982 F.2d 31 (1st Cir.1992); *J.L. Foti Constr. Co. v. Donovan,* 786 F.2d 714, 716–17 (6th Cir.1986); *United States v. Baldwin,* 644 F.2d 381 (5th Cir. 1981); *United States v. Hendrix,* 595 F.2d 883 (D.C.Cir.1979); *United States v. Sumlin,* 567 F.2d 684 (6th Cir.1977); *State v. Ramold,* 2 Neb.App. 545, 511 N.W.2d 789 (1994); *People v. Cosme,* 48 N.Y.2d 286, 422 N.Y.S.2d 652, 397 N.E.2d 1319 (1979).

The rationale behind permitting a co-occupant to consent to a warrantless search is that "a joint occupant assumes the risk of his

exposing their common private areas to such a search." *United States v. Sumlin, supra,* 567 F.2d at 688. Thus, a defendant's refusal to consent in no way lessens this assumed risk. "Although there is always the fond hope that a co-occupant will follow one's known wishes, the risks remain. A defendant cannot expect sole exclusionary authority unless he lives alone, or at least has a special and private space within the joint residence." *United States v. Morning, supra,* 64 F.3d at 536.

We find support for this rationale in *People v. Sanders, supra.* There, the court held that a search based on the consent of a co-occupant was valid despite the physical presence of the defendant, who was also a co-occupant and who did not consent. The court relied on the assumption of the risk rationale and stated, "the rationale is not dependent upon the defendant's consent or non-consent to the search." *People v. Sanders, supra,* 904 P.2d at 1315.

■ The authority of a co-occupant to consent to a search is based on the co-occupant's privilege in his or her own right to permit a search of premises over which he or she has a joint right of access and control. *People v. Sanders, supra* (citing *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)). Thus, the fact that the search is focused on discovering information about a defendant does not give the defendant the right to preempt or overrule the consent given by a co-occupant in his or her own right. For the same reasons, after the court has determined that the co-occupant has joint access to, and control over, the premises to be searched, there is no need for the court to weigh the relative strengths of the defendant's and the co-occupant's privacy interests.

Accordingly, we conclude that defendant's express refusal to consent to a search did not invalidate the search based on the free and voluntary consent of his wife, a co-occupant of the premises who had joint access and control.

## V.

■ Finally, defendant contends that the trial court erred in finding that his challenge to two prior Colorado convictions used in the habitual criminal proceeding was time barred by § 16–5–402, C.R.S.2003. We perceive no error.

Defendant's sole argument is that he timely challenged these convictions in the courts that entered them, and therefore, the time bar should not apply in this case. However, the record on appeal does not show any information relating to postjudgment proceedings in the courts that entered the convictions.

■ It is the defendant's responsibility to designate the necessary record on appeal. Any facts not appearing in the record cannot be reviewed, and the presumption is that material portions omitted from the record would support the judgment. *People v. Wells,* 776 P.2d 386 (Colo.1989). Because defendant failed to include documentation concerning these alleged timely challenges, we must presume that the omitted portions of the record support the trial court's judgment, and therefore, the court properly considered the two Colorado convictions.

Defendant also challenges three of the Louisiana felony convictions used in the habitual criminal proceeding, but he raises no challenge to a fourth Louisiana felony conviction. We need not consider defendant's challenge because the unchallenged Louisiana conviction together with the two Colorado convictions referred to above justify defendant's sentence under § 18–1.3–801(2), C.R.S.2003, which requires only three prior felony convictions to impose habitual criminal sentencing. Vacating the finding of additional convictions would have no effect on defendant's sentence. *See People v. McMurrey,* 39 P.3d 1221 (Colo.App.2001)(an issue on appeal is moot when the relief, if granted, would have no practical effect on the controversy).

Therefore, we conclude that defendant was properly sentenced as a habitual criminal under § 18–1.3–801(2).

## VI.

We have considered defendant's contentions relating to the admission of evidence,

and we perceive no error in the trial court's rulings.

The judgment is affirmed.

Judge PICCONE and Justice ERICKSON ** concur.